## MARIAN F. POWELL v. UNION PACIFIC RAILROAD COMPANY, Appellant.

Division One, March 3, 1914.

1. **EVIDENCE: Defective Railroad Rails: Not at Place of Broken Rail.** In a personal injury case based on a derailed train caused by a broken rail, the condition of the roadbed and track at the place and in the immediate vicinity of the accident is the principal subject of inquiry, and defects remote from that place are not admissible in chief. But where defendant attempted to show that the track on the whole section, as well as in the immediate vicinity of the accident, had been put in good condition, repaired and inspected from day to day for defects in roadbed, ties and rails, and none whatever existed, plaintiff was entitled to cover the same ground to controvert the character of the inspection and the general condition of the track— to show, in this case, that broken and cracked anglebars were found three rails' length ahead of the engine after the accident.

2. **————: Loss of Husband: Compensatory Damage to Family: What was Spent.** Under the Kansas statute, in a suit for the loss by death of the husband and father, due to defendant's negligence, pecuniary loss is the measure of damages, which are strictly compensatory in character; and where the wife and minor children are without means of support and he furnished the whole of it, evidence of the household expenses of the family would throw some light on the pecuniary loss; and the amount of money they had is not the best test, if any test at all.

Powell v. Railroad.

3. ———: ———: Attorney Riding on Pass: Consideration: Trial of Cases. Where the decedent attorney accepted an annual pass over defendant's railroad in consideration of an agreement not to take any cases against defendant during the year, it is immaterial, as tending to show whether or not the pass was a gratuity, whether or not he tried any case for defendant within that year. An executed promise is a good consideration.

4. ———: Knowledge Based on Experience. Where the engineer of the derailed train testified that he had never had a broken rail before in his experience, it was not error to refuse to permit him to testify whether from his "experience a rail is more apt to break on a very cold morning than in any other kind of weather."

5. ———: Refusal to Permit Witness to Answer: No Proffer of Proof: Materiality Not Discernible. Where there is no offer of proof in connection with the ruling by which the witness was not permitted to answer a certain question, by which the court can see that the merits of the case were in any wise affected by the refusal, the ruling will not be held to be reversible error. To reverse a judgment on the mere exclusion of a question, unless evidence is thereby excluded which is shown to be material, either by the question itself or by the context or by a direct offer of proof, would be hazardous and unjudicial.

6. ———: ———: Expert: Competency: Master Mechanic: Superintendent. The mere fact that the witness is a master mechanic or a railway superintendent does not qualify him to testify as an expert as to the tensile or thrusting or bending strain or strength of a given steel rail.

7. ———: Hypothetical Question: Necessary Elements. It is not error to refuse to permit a witness, though an expert, to answer a hypothetical question from which are omitted necessary elements.

8. ———: Tested by Power to Produce and Contradict: Absence not Accounted For. All evidence is to be weighed according to the proof which it was in the power of one side to have produced and in the power of the other side to have contradicted. And that observation is peculiarly apposite where the defendant's excluded inquiry is as to the strength of the steel rail to bear a train, and the broken parts of the rail where the accident occurred were carefully collected by defendant and carried away for the purpose of examination to determine the cause of the derailment, and were not produced at the trial nor their absence accounted for.

9. ———: Statute Modifying Common Law: Statutory Action. In a statutory action for personal injuries inflicted in another

Powell v. Railroad.

State, it is not error to exclude as evidence a statute thereof declaring that "the rule of the common law that statutes in derogation thereof shall be strictly construed shall not be applicable to any general statute of this State," in the absence of any proffer of decisions of that State holding a different view of the common law from that announced by the courts of this State, since the action is not one at common law, but statutory.

10. ————: Estoppel: Suit For Death: Another Suit for Depletion of Estate. Where plaintiff as administratrix sues under a Kansas statute for the death of her husband caused by injuries wrongfully received while a passenger on defendant's train, her petition in another suit for the same amount for the depletion of her husband's estate, under another statute of that State allowing such a suit where the husband dies, but not requiring such death to be due to his injuries, cannot be held to be an estoppel if the said petition does not admit that his death was due to any other cause than his injuries. It was not error to exclude such petition, nor such statute, even though the Kansas decisions hold that where the injuries cause death the suit can be bottomed only on the first statute, but where the injuries do not cause death, but death results from other causes, the suit for the depletion of the estate can be maintained only under the other statute. An admission in writing must be found in the writing—and cannot be got at by inference, or by piling one inference upon another; and there being no admission in the petition to the effect that the death of plaintiff's husband resulted from other causes than the injuries received when the train was derailed, the petition contained no estoppel.

11. INSTRUCTION: Assumption of Fact to Be Found. An instruction on the measure of damages beginning, "If you find for plaintiff then you should assess her damages, if any," etc., does not assume the injuries caused the death of plaintiff's husband. The elements to be considered by the jury in determining whether or not they will find for plaintiff, are not usually dealt with in an instruction on the measure of damages.

12. ————: On Measure of Damages: General Terms: No Request for Restriction. An instruction in general terms, telling the jury that "if you find for plaintiff then you should assess her damages, if any, at such sum, if any, as you believe and find from the evidence to be a fair and just pecuniary compensation, only, for damages, if any, to her and her daughter, Marjorie Powell, occasioned by the death of Frederick Powell, not exceeding the sum of ten thousand dollars," where defendant asked no instruction on the measure of damages and made no attempt at the trial to have the jury restricted from a consideration of certain things, for instance, pain and an-

guish suffered by defendant, or sorrow suffered by plaintiff and Marjorie over the death, is not vulnerable to attack on appeal.

13. ———: ———: Pecuniary Compensation: No Definition. In a suit by the administratrix to recover, under a statute of Kansas, compensatory damages sustained by her and her child by the negligent killing of her husband, an instruction telling the jury to find "a fair and just pecuniary compensation" is not erroneous on appeal for that neither it nor any other instruction defines the words "pecuniary compensation," no request for such a definition having been made by appellant. In the very nature of things "pecuniary loss" lies within the concept of "pecuniary compensation," and the words, without definition or explanation, are a favored phrase in Kansas judicial exposition; and nothing in the verdict of the jury, presumably intelligent and honest men and attentive to their oaths, indicates that they gave consideration to any matter not cognizable as a necessary element of the damage.

14. ———: Non-Direction: Case How Considered on Appeal. Under the statute (Sec. 1987, R. S. 1909), in a civil case a party has the option to ask or not ask instructions, and the court owes no duty to either party to give instructions, either on its own initiative or in lieu of those refused; and where in a case at law no instructions were asked or refused on either side, the only issue on appeal may be whether the petition states a cause of action, or whether a demurrer to the·evidence should have been sustained, or whether the judgment is responsive to the pleadings, or a motion in arrest would lie. But this rule is not to be construed as favoring the submission of a cause to a jury without proper instructions on the rules of law applicable to the evidence and covering the whole case on issues essential to recovery.

15. ———: Assumption of Fact: Decedent a Passenger: Failure to Cover all Issues. An instruction telling the jury that deceased was a passenger, and not purporting to be a general instruction coercing a verdict for plaintiff if the facts hypothesized therein are found by the jury to exist, is not erroneous for that it does not cover all the issues—the court having already properly ruled, by refusing a demurrer to the evidence, in the form of a mandatory instruction, that deceased was a passenger.

16. ———: No Evidence: Derailment of Train: . Suspended Joint. Where, in a suit for injuries to a passenger caused by a derailment of. a train, there was evidence that a rail broke about fourteen inches from a suspended joint (by which is meant a joint with no tie under it); that suspended joints, under certain circumstances, are allowable construction, when

Powell v. Railroad.

the ties on both sides are sound and the angle bars are spiked to them; and also evidence tending to show that, to have a joint spliced with angle bars and directly over a solid tie, would be better than a suspended joint; and evidence that there were bad ties close to the joint and none that the angle bars were spiked to the ties, and some that the angle bars at the place were imperfect, the court did not err in refusing, by an instruction, to take away from the jury a consideration of the suspended joint.

17. ————: **Cause of Death: No Instruction.** Where plaintiff sues, under a Kansas statute, for the loss of her husband by death due to defendant's negligence, there can be no recovery unless the evidence connects the injuries received when the train was derailed with his death; and a general demurrer will search the evidence in that particular, even on appeal. But where the evidence substantially establishes a causal connection between the injuries and his death, a failure of the instructions to put to the jury the issue of whether the injuries caused his death is only nondirection and not misdirection, and is not reversible error.

18. **PASSENGER: Derailed Train: Riding on Pass: Conflict Between Contract and Words on Pass.** By written contract the defendant railroad company agreed to furnish plaintiff's husband, an attorney, " an annual pass during the term of his employment," and "said attorney agrees to accept said pass as a retainer, in consideration of which he agrees he will take no cases against said railroad company." On the back of the pass itself, among the "conditions," it was stated that "this is a free pass, based upon no consideration whatever" and "the person accepting and using this pass in consideration of receiving the same agreed that the railroad company shall not be liable under any circumstance, whether for negligence, criminal or otherwise, of its agents or others, for any injury to the person * * * of the individual using this pass, and that as to such person the company shall not be considered as a common carrier or liable as such," and the attorney agreed that "the pass is subject to the above conditions" by signing his name thereto. The attorney was riding on the pass, on his own business, when the train was derailed and he received the injuries which subsequently resulted in his death. *Held*, that he was a passenger. The pass was issued upon a sufficient consideration, namely, a retainer as attorney and an agreement to take no cases against the railroad company, which was fully performed by him, and the rule in such cases is that the person using the pass is a passenger to all intents and purposes and is under the protection of the rules of law prescribing the duties of a carrier to a passenger for hire; and

the consideration being present, the "conditions" and attempted limitation of liability were illegal.

19. ———: Limitation of Liability: By Contract: Pass Based upon Valid Consideration. Under a wise and settled doctrine of public policy common carriers for hire are denied the right to contract against liability for negligence in the carriage of passengers.

20. ———: Freedom of Contract: Constitutional Right. Under the police power freedom to contract may be regulated by law where the public health, public safety, public morals or public welfare call for it; and where the injured party was riding on a pass at the time the train was derailed and he was injured, upon which pass was a condition, signed by him, relieving defendant from all liability for any injuries he might receive, and that pass was issued to him upon a valuable consideration fully performed, it is vain to interpose as a defense propositions relating to the constitutional right of freedom of contract or those guaranteeing due process of law and equal protection of the laws. The carrier may stipulate in regard to its liability and for exemptions therefrom, but they must be just and reasonable in the eye of the law; and it is opposed to wise law and unreasonable, to permit a common carrier to contract for entire freedom from liability to the user of a pass issued upon sufficient consideration.

Appeal from Jackson Circuit Court.—*Hon. Walter A. Powell,* Judge.

AFFIRMED.

*R. W. Blair* and *Watson, Watson & Alford* for appellant.

(1) Under the pleadings and evidence deceased Frederick Powell was shown not to be a passenger and the court should have directed a verdict for defendant. The clause in the pass which provided that the holder of said pass when using same should not occupy the relation of passenger and carrier was a valid stipulation and was a contract about a private and not a public matter, and no rule of public policy was violated by said clause. Railroad v. Adams, 192 U. S. 440; Santa Fe. P. & P. Co. v. Grant Bros., 33 Sup. Ct. 477; Long v. Railroad, 130 Fed. 870. (2) The

clause in the contract providing that the holder of said pass when riding upon the same should not occupy the relation of passenger and carrier was a contract of private employment about a private matter, and where the public had no right to intervene, and the trial court denied to defendant such right of private contract, which is and was a property right, and in holding the contract contained in said pass void the court deprived defendant of its property without due process of law and denied to defendant the equal protection of the laws in violation of Sec. 1, 14 Amendment, U. S. Constitution. Railroad v. Adams, 192 U. S. 440; Santa Fe P. & P. Co. v. Grant Bros., 33 Sup. Ct. 477; Mathews v. People, 202 Ill. 389, 63 L. R. A. 73; Pritchard v. Norton, 106 U. S. 124. (3) The ruling of the trial court also violated Sec. 30, art. 2, Constitution of Missouri, in denying the validity of said contract of employment. Authorities cited above. (4) The court erred in excluding Sec. 8014, Gen. Statutes of Kansas, 1901, offered in evidence by defendant. This section adopted the common law in Kansas and as the alleged injury occurred in Kansas it was competent evidence as to the rule of law governing the parties to this suit. (5) The court erred in excluding the petition of plaintiff offered in evidence by defendant and which was filed in the district court of Washington county, Kansas, in December, 1909. This petition and section 420 of Statute of Kansas and case of Martin v. Railroad, 58 Kan. 475, offered in evidence, under which section said suit was instituted, constituted an admission that Frederick Powell, deceased, did not die as a result of the injuries claimed to have been received December 18, 1907. (6) The court erred in giving instruction number 1 asked by plaintiff. It assumes Frederick Powell died as a result of the injuries alleged to have been received December 18, 1907, and is too general and does not correctly state the law of Kansas, and does not define

what elements go to make up the damages under the laws of Kansas. (7) The court erred in giving instruction number 2 given on behalf of plaintiff. Said instruction does not correctly state the law. It assumes the fact of a wreck raised not only a presumption of negligence, but of an injury as well, and casts upon defendant the burden of showing deceased did not die as a result of injuries received December 18, 1907, when the correct rule required the plaintiff to show Frederick Powell died as a result of the alleged injuries received as a direct result of appellant's negligence. Logan v. Railroad, 183 Mo. 582; Hipsley v. Railroad, 88 Mo. 347; Farwish v. Railroad, 102 Mo. 438. (8) The court erred in permitting the plaintiff to show over the objection and exception of appellant that there were cracked angle bars at points other than at the point of derailment of the train. George v. Railroad, 225 Mo. 398; Maloney v. Railroad, 108 Mo. 191.

*Sherman & Landon* and *Sebree, Conrad & Wendorff* for respondent.

(1) The deceased, Frederick Powell, was at the time he was injured a passenger and entitled to all the rights of a passenger. Hutchinson on Carriers (3 Ed.), secs. 997, 1073; Railroad v. Stevens, 95 U. S. 655; Railroad v. Lockwood, 17 Wall. 357; Railroad v. Derby, 14 How. 468; Kerkendall v. Railroad, 200 Fed. 197; Railroad v. Williams, 200 Fed. 207; Carroll v. Railroad, 88 Mo. 239; Cherry v. Railroad, 191 Mo. 518; Muldoon v. Street Railway, 22 L. R. A. 794; Railroad v. News Co., 151 Mo. 387; Jones v. Railroad, 125 Mo. 666; Cornell v. Railroad, 143 Mo. App. 598. (a) Deceased was not an employee.. Clark v. Renninger, 89 Md. 66; Latta v. Lonsdale, 107 Fed. 585. (b) An employee may be a passenger and entitled to their rights. Hutchinson, Carriers (3 Ed.), sec. 1004; McNulty v. Railroad, 182 Pa. St. 479, 61 Am. St. 721;

Haas v. Railroad, 111 Mo. App. 706; St. Clair v. Railroad, 122 Mo. App. 579; Williams v. Oregon Short Line, 18 Utah, 210, 72 Am. St. 777; Whitney v. Railroad, 102 Fed. 850; Dewey v. Dwyer, 20 Colo. 132; Doyle v. Railroad, 166 Mass. 492; Eberts v. Railroad, 157 Mich. 260; Peterson v. Seattle Trac. Co., 23 Wash. 615; Harris v. Puget Sound, 52 Wash. 289. (2) The court did not err in excluding section 8014 of the statutes of Kansas making the common law effective in Kansas. It was immaterial and affords appellant no relief. Moore on Carriers, p. 594; Railroad v. Derby, 14 How. 468; Shoemaker v. Kingsdale, 29 U. S. 369; Railroad v. Walsh, 45 Kan. 653; Railroad v. Elder, 57 Kan. 317; Price v. Railroad, 220 Mo. 461. (3) The court did not err in excluding the petition filed by respondent in a suit in Kansas. It was not an admission. The evidence was overwhelming that deceased came to his death because of the injuries. Macdonald v. Railroad, 219 Mo. 480. (4) The court did not err in the giving of the instructions requested by respondent. (a) No. 1 on the measure of damages: Browning v. Railroad, 124 Mo. 71; Boetgger v. Iron Co., 124 Mo. 87; Lee v. Railroad, 195 Mo. 428; Railroad v. Townsend, 71 Kan. 529; Coal Co. v. Limb, 47 Kan. 469; Railroad v. Ryan, 62 Kan. 682; Cahill v. Railroad, 205 Mo. 407. (b) No. 2 on measure of duty: Price v. Railroad, 220 Mo. 444; Morris v. Railroad, 239 Mo. 715. (5) There was no error in the admission or rejection of testimony as to household expenses. Gas Co. v. Carter, 65 Kan. 565.

LAMM, J.—Suing in the Jackson Circuit Court on a cause of action originating in Kansas, and bottomed on a Kansas statute, plaintiff, as administratrix of Frederick Powell, deceased, sues for his death from injuries wrongfully received while a passenger on one of defendant's trains. She had a verdict for $7500, for the benefit of herself as widow and her minor child,

Marjory, aged five.  Defendant appeals from a judgment entered on such verdict.

Attend to such a summary of the pleadings as will intelligently outline the issues, to-wit:

*The petition.*

After alleging her residence in Washington county, Kansas; the death of her husband on the fourth day of October, 1909, intestate; her appointment as administratrix by the probate court of that county and her assumption of the burden of administration; that he left plaintiff as his widow and an only child, Marjory, of tender years (together with plaintiff his only heirs); that plaintiff lived for several years with said Frederick in lawful wedlock and that he continuously and suitably supported her and his child until he was injured by the negligent acts of defendant; that defendant was incorporated under the laws of Utah and owned and operated a railroad in Kansas—we say, after the foregoing averments, the petition goes on to allege the existence and to set forth the terms of a statute in Kansas.  (Note: This is the statute on which the action is based and it will appear further on in the opinion.)

Plaintiff further charges that decedent was a passenger upon one of defendant's regular passenger trains upon the 18th of December, 1907; that at a certain point in Kansas near a station, Lawrenceburg, on said date said train was wrecked through the negligence of defendant, its agents, servants, and employees; that the train, thereby thrown from the track, was turned upon its side; that said Frederick was violently thrown head foremost, striking the edge of a seat and the car window some ten feet from the place he had been seated and out of the car window, striking head-foremost in a ditch beside the track and under the car and therefrom receiving painful and permanent injuries from which, never recovering, he suffered great pain and died on said day in October, 1909; that if he

had lived he might have maintained an action against defendant for injuries so received by him and so caused by said carelessness and negligence; that he was practicing his profession of an attorney-at-law in said Washington county; that he was able-bodied and industrious, forty-six years of age, earning between $2,000 and $3,000 a year, and that by reason of the premises plaintiff had been damaged in the sum of $10,000, for which she asks judgment.

*The answer.*

The trial answer, filed when the case was called for trial, was a second amended answer denying all allegations of the petition excepting that relating to defendant's incorporation. For a further defense, it averred that the first of January, 1907, defendant and decedent entered into a contract of employment whereby Powell agreed to act as local attorney for defendant in Washington county, Kansas, for the year 1907; that as "part of the contract" defendant agreed to issue Powell an annual pass good in Kansas "and the said Powell agreed to accept said annual pass as part of the contract of employment;" that such pass was issued on January 1, 1907, was signed by said Powell and accepted as part of his contract of employment. One of the conditions printed on the back of the foregoing pass is here pleaded *in haec verba* in the answer. (Note: The back and front of the pass will appear in due course in this opinion together with the written contract of employment in pursuance to which the pass purported to be issued. *Q. v.*) The answer then goes on to aver that at the time of his injury Powell was an employee of defendant riding upon said pass; and the terms and conditions of the pass (relieving defendant from liability for negligence, or for any injury to his person and providing that the company should not be considered as a common carrier or liable as such) are pleaded as a defense to the action, coupled with an averment that to permit recovery or

the maintenance of an action violates the contract in those particulars and violates section 10 of article 1 of the Constitution of the United States and article 5 of the amendments to the Constitution of the United States in that it would deprive defendant of its property without due process of law, and section 1 of the Fourteenth Amendment to the Constitution of the United States in that it deprives defendant of its property without due process of law and denies to it the equal protection of the law in making contracts which is guaranteed to private individuals in Kansas. It is next averred that Powell knew the terms and conditions of his pass, 'that he paid no fare and "was not travelling on the company's business at all" and by the terms of the agreement waived any right of action for any alleged injuries.

As a third defense defendant pleaded a subsequent suit instituted by plaintiff in the district court of said Washington county, for the same sum on the same injuries and accident, for loss and damages to the estate of said Frederick Powell, under a section of the Kansas statutes which, if alleged, gives a right of action to a person's estate who is injured but who thereafter dies from some other cause not connected with such injury. (Note: There are two sections of the Kansas statutes referred to in the answer, to-wit, sections 420 and 422, Kansas G. S. 1901, secs. 4869, 4871, the one (420) it is alleged in the answer gave a right of action for the depletion of the estate when death does not occur from the injuries. The latter (422) is the same section pleaded in the petition. The other section will appear in due course on the consideration of a ruling on the admission of evidence.) The answer then pleads an admission of record by the bringing of the second suit and an estoppel, thus (quoting):

"  . . .  that by bringing such suit under and by virtue of the provisions of section 420 of the

Statutes of the State of Kansas, plaintiff has admitted of record that the deceased Frederick Powell did not die from the injuries received at the time and place mentioned and set forth in plaintiff's petition herein; and that the plaintiff herein is now estopped by reason of such suit to allege and aver in this petition that the said Frederick Powell did die of such injuries. That under and by virtue of the decisions of the Supreme Court of Kansas, construing sections 420 and 422, a right of action arising under section 420 exists only when the deceased did not die as a result of the injuries received, if any, at the hands of the defendant; and that in bringing such suit in the State of Kansas for damages to the estate of Frederick Powell, deceased, as provided in section 420, the plaintiff herein admits of record that the deceased Frederick Powell did not die of the injuries alleged to have been received at the time and place mentioned in plaintiff's petition herein, and she is therefore estopped to deny the allegations and effect of the suit instituted in the State of Kansas under section 420 aforesaid.''

For a fourth defense defendant renews its general denial and next specifically denies that plaintiff is the administratrix of the estate of Frederick Powell ''with authority vested in her to bring suit in the State of Missouri.'' (Note: Her appointment as administratrix was proved and we do not find that her authority to sue in the State of Missouri is questioned in briefs, hence the fourth defense, hinging on the specific denial, drops out of the case and will receive no further attention.)

*The reply.*

To the foregoing amended answer, plaintiff replied, admitting that Powell acted as local attorney for defendant during the year 1907 in Washington county; that defendant issued an annual pass to him on the first day of that year and that at the time of

the injuries he was not engaged in the company's business, and then denies all allegations of new matter and renews the prayer for judgment.

By way of affirmative matter the reply avers a written contract of employment between Powell and defendant whereby in January, 1907, he was appointed defendant's local attorney for a period of a year and accepted the employment. (Note: The terms of the contract itself will shortly appear in due course. Q. v.) It is next averred that deceased accepted the pass as a "retainer" in consideration of which he agreed that he would take no cases against said defendant and would assist defendant's attorneys in their local legal affairs and aid in'the preparation for trial of all cases pending in Washington county without any other or further consideration than the said pass; that the pass was issued by defendant in compliance with the contract; that during the year 1907 Powell acted as the local attorney for the defendant under the contract, complying with all its terms, and that at the time of his injuries the contract was in full force. It then pleads a certain statute of the State of Kansas to the effect that railways in that State are liable for all damages done to persons or property when done in consequence of any neglect on the part of the railway company, and next certain decisions of the Supreme Court of Kansas alleged to be to the effect that the provisions of the pass making defendant not liable to the holder under any circumstances whether for negligence or otherwise of its agents or others, for injuries to the person, were null and void and constitute no defense.

*The facts.*

The following facts are either admitted by the pleadings or proved by uncontradicted evidence, to-wit: The Kansas statute on which the suit is bottomed is, to-wit:

"Section 4871. When the death of one is caused by the wrongful act or omission of another, the personal representatives of the former may maintain an action therefor against the latter, if the former might have maintained an action had he lived against the latter for an injury for the same act or omission. The action must be commenced within two years. The damages cannot exceed ten thousand dollars, and must inure to the exclusive benefit of the widow and children, if any, or next of kin, to be distributed in the same manner as personal property of the deceased."

Early in January, 1907, decedent, in full practice as an attorney and loan agent at the county seat of Washington county, Kansas, entered into the following contract with defendant in writing (this is the contract referred to in the answer and reply), to-wit:

Union Pacific Company.

Attorney's Contract.

This agreement made this first day of January, A. D. 1907, between Union Pacific Railroad Company, as party of the first part, and Fred Powell, party of the second part,

Witnesseth, That the said railroad company, has this day, and by these presents doth hereby appoint said party of the second part as local attorney at Washington, Kansas, the terms and conditions of said employment to be as follows:

First. Said railroad company to furnish said attorney an annual pass during the term of his employment, good over all lines operated by Union Pacific Railroad in Kansas.

Provided, however, that said railroad company reserves to itself the right to limit such annual pass to any trains or class of trains, and to refuse to honor said pass upon any special, limited, fast mail or other trains.

Second. Said attorney agrees to accept said pass as a retainer, in consideration of which he agrees that he will take no cases against said railroad company; that he will assist the attorneys of said railroad company touching their and each of their local legal affairs and will aid in the preliminary preparation for trial of all cases pending in his county, without any other or further consideration than the said pass.

Third. Said attorney also agrees that he will when directed in writing by the general solicitor or the attorney in charge of the legal business of said railroad company in Kansas attend to all legal business of which he may be directed to take charge.

Fourth. Said railroad company agrees to pay to said at-

torney a reasonable compensation for all services actually performed in accordance with such written directions given as above stated, it being understood that in case of any disagreement between said local attorney and the attorney of said railroad company in charge of the legal business of said railroad company in Kansas as to what is a reasonable charge for any service performed the matter shall be referred to the general solicitor of the said railroad company whose decision as to the amount to be paid shall be final.

Fifth. This contract of employment is to terminate without further notice, on the last day of the current year and it is further agreed that this contract of employment may be terminated at any time by written notice from either party, and in case of a termination of said contract prior to the last day of any year, such attorney shall return to said railroad company the pass or passes furnished to him as such attorney, as a retainer as heretofore stated.

In Testimony Whereof, the said Union Pacific Company has caused this instrument to be executed by its general attorney and the said party of the second part has hereunto set his hand this 1st day of January, A. D. 1907.

Union Pacific Railroad Company.

By A. H. Loomis,

General Attorney for Kansas.

Fred Powell,

Attorney at Law.

Decedent complied with the foregoing contract and, in pursuance thereof, defendant issued to him the following pass—the "conditions," we infer, being on its back—to-wit:

Union Pacific

1907.

Pass Fred Powell

Within the State of Kansas

Local Attorney

Until December 31, 1907, unless otherwise ordered.

Void unless countersigned on back.

A. L. MOHLER,

Vice President and General Manager.

Good on Lines East of Green River, Wyo.

Union Pacific Railroad Company.

CONDITIONS.

This pass may be revoked at any time, and if presented by any other person than the individual named hereon, or if any alteration, addition or erasure is made upon it, it is forfeited and the conductor will take it up and collect full fare. This is a free pass, based upon no consideration whatsoever. The

Powell v. Railroad.

person accepting and using this pass in consideration of receiving the same, agreed that the Union Pacific Railroad Company shall not be liable under any circumstances, whether for negligence; criminal or otherwise, of its agents or others, for any injury to the person, or for any loss or damage to the property of the individual using this pass, and that as to such person the company shall not be considered as a common carrier or liable as such.

I hereby assent to the above statments and hereby agree that this pass is subject to the above conditions, and that I will make my signature whenever required by the company's agents or conductors.

Fred Powell.

(Sign in ink.)

On right hand margin.

On left hand margin:

Not good on Overland or Los Angeles limited trains.

No. B 1759.

Void unless countersigned by T. M. Orr.

T. M. ORR.

When injured decedent was riding on that pass on one of defendant's passenger trains on his own business. While so riding hard by the station of Lawrenceburg on one of defendant's branches connecting with its main stem in Kansas, at about ten o'clock a. m. on December 18, 1907, during zero weather, the train (running east at from twenty to twenty-eight miles per hour) was derailed at or nigh the point of a curve. The engine, pulling a combination mail, express and baggage car, a smoker and a day coach, stayed on the track and broke from the train. The latter pounded along on the ties a hundred feet or so and then careened over into a ditch, no little smashing itself, destroying the track and supplying the usual phenomena incident to a wrecked train. Decedent, thrown forward several feet, was pitched violently headlong out of the car window into the ditch. Just what he struck is not clear, but there is no dispute about the character of his grave injuries. He was cut to the bone in several long slashes about the head, above the ear, across the eyebrow and cheek, and pieces of his scalp torn out. He was hurt in the back, under-

neath the clavicle, on the right side, and there were
indications that his ribs were broken at that point,
there being a painful depression. He was hurt in the
chest, as near as we can make out, about opposite his
injury in the back, and at once and ever afterward
complained of misery there. He lost much blood, and
either fainted from its loss or became unconscious
from the concussion and wounds. He was hurried on
the engine in a helpless condition to Clyde, a near-by
town, for surgical help. When he was carried into a
friend's house there he was unconscious and "looked
like a dead man." He remained there for, say, a
fortnight in bed, when he was taken by rail to his own
home. Abcesses attributable to his hurts in his chest
and ribs developed in one of his lungs presently, we
take it several times, and, it seems, after fits of cough-
ing up blood and pus the distressing symptons incident
to such abcesses would measurably go away. Presently
his lungs partly cleared but there was a field of con-
gestion or hardening in his right lung that never dis-
appeared, as we read the record. In February or
March, 1908, having rallied so as to be about, he was
able to take a trip or two with his brother, to look after
land business in western Kansas, but was never again
able to attend to his full professional duties. From
the very outset until the end came, off and on, he had
spells of labored breathing, getting worse and worse,
toward the end developing into a case of "Cheyne-
Stokes" respiration, indicating cardiac and cerebral
affections. He was uncertain in his steps, easily
fatigued, sometimes incoherent in his speech, irritable,
falling off in flesh, and was weak and aenemic, declin-
ing from day to day in bodily and mental activity until
he died in October, 1909. The doctors testified that,
as a natural result, the shock, concussion and the in-
juries he received would impair the nerve supplying
the vital organs, the stomach, liver, heart and lungs,
to-wit, the pneumo-gastric nerve, whereby those organs

more and more refused to perform their normal functions and his vitality was gradually lowered away until he died as a result. There is no evidence contradicting the fact that such nerve was impaired and that such impairment caused death. Having, as said, rallied in the early part of 1908, a relapse presently came. Having been in the care of local physicians, when the relapse came he was sent to a hospital at Topeka. He was tested for tuberculosis bacilli. None were found. We have searched the record in vain for any evidence indicating any other cause of his death than his injury in the wreck; for, prior to that he was a strong man physically, weighing from 156 to 160 pounds, forty-six years old, with an active mind, and earning around $2,000 per annum in his professional business. After the wreck a marked change came in those particulars, as already pointed out. Defendant introduced no evidence tending to show any other cause for his death, nor did it attempt to on its own initiative. Nor did it ask any instruction on that score. In fact, outside of a cross-examination of plaintiff's witnesses, it did not pursue any line of inquiry directed to establishing any other cause for his death. Attending to that phase of the matter, on cross-examination of some of plaintiff's witnesses it was able to show that decedent was a heavy smoker, that as a medical theory smoking sometimes produces a "tobacco heart" but it was not able to show decedent had a tobacco heart. The evidence was *contra*. So on such cross-examination it was able to show that once in a while he had headache and now and then had constipation, and had prescriptions by physicians for those ailments. But all the testimony worth while, and there was a body of it from uncommonly excellent witnesses, tended to show he was a sound man when hurt in the wreck. At a certain unknown time before his injury in the wreck there is inferential testimony that he had an operation performed for piles, but, as

said, there is no substantial testimony connecting any of those ailments with the grave symptoms beginning at the time of his injury and continuing down to the day of his death, showing he got a mortal hurt at that time from which he languished and, languishing, died.

The track at the place of the accident ran east and west. There is no controversy among the witnesses but what the south rail broke about fourteen inches from a suspended joint, by which is meant a joint with no tie under it, a joint spliced with an angle bar bolted on each side, and, where possible, spiked to the ties on each side of the joint. The broken rail was made in 1881 and was a sixty-pound steel rail thirty feet in length. It had been in use on defendant's main track, but was transferred to the branch in question in 1896, at a time sixty-pound steel rails were laid there to take the place of fifty-four-pound iron rails hitherto used.

In canvassing a voluminous abstract and counter-abstract (the product of a ten-day trial) and doing the best we can, we conclude the foregoing facts are practically uncontroverted.

We now come to a set of facts about which there is controversy, to-wit, plaintiff introduced evidence tending to show that some of the ties at the place of the accident were unsound from rottenness. It seems some of them were soft-wood ties and some were oak. Some of the evidence indicates that the soft-wood ties were hard pine and some of it that they were white pine—all treated with creosote. Plaintiff also introduced testimony to the effect that at the first break in the rail, the one next to the suspended joint, there was an old rusty fracture and that only a part of the rail was sound at that point. It seems the rail broke in six or seven pieces; one, twenty-one feet long and the others varied from a foot and one-half to two feet or over, and there is no accounting for the wreck except by the breaking of this rail. Attending to these

breaks and the track, defendant put in a great body of evidence tending to show that pine ties treated with creosote were usual and good construction and maintenance; that the rail was sound, the angle bars sound (though there was some testimony *contra* on angle bars) and the breaks all new and fresh; that the ties were sound; that the track and ties had been inspected in the section where the accident happened, and at that point, carefully the day before and on the day of the wreck and were in good condition; that new ties had been put in at that place shortly (say, a month or so) before the wreck and the track lined and shaped up and tamped for winter; that, in short, it was in first-class condition in all respects.

There was uncontradicted evidence put in by defendant that the train was well equipped and in perfect condition. It seems it was a sandy country and the natural sand of the country was used instead of cinders, burnt gumbo or rock for ballast. There was testimony that intense cold makes steel rails much more brittle than when the weather is warm. In short, the substantial trend of defendant's proof on the facts was to show no negligence in the construction and condition or maintenance of its track, roadbed or train equipment.

So much for the facts.

Questions are here on the giving and refusing of instructions and on rulings on the admission and exclusion of evidence. Any further facts or record essential to an intelligent understanding and disposition of such of those questions as seem material will appear in connection with their determination.

Defendant's learned counsel having assigned twenty-five errors and having pretermitted ten of them in their "points," it may be an appellate court (presumably no little adept in ruminative contemplation and condensation) will be able to accomplish a further reduction.

Tentatively, on oral argument, I was of the notion the judgment stood for reversal, but a thorough study of the whole record and briefs has convinced me it stands for affirmance. This because:

I. *Of rulings on evidence.*

(a) Certain evidence was admitted over objection and error is assigned on that head. Thus:

(1) Plaintiff on cross-examination of some of defendant's witnesses was able to show that an angle bar at the point the rail broke was found cracked or broken and then was allowed, over objection, to show that broken or cracked angle bars were found a little ways (say, three rails' lengths) ahead of the engine after the wreck. It is argued that the admission of that testimony was error. As to that contention we say: It stands to reason that usually the condition of the track and roadbed at the place and in the immediate vicinity of the accident is the principal subject of inquiry, on the head of track conditions, in a case like that at bar. [Hipsley v. Railroad, 88 Mo. 1. c. 354.] Defects in the track disconnected and remote from the place of the accident are not admissible in chief; for they have no tendency to prove the track out of repair at the point of the accident. Hence, evidence of that character should be rejected unless (as often happens) defendant relies on the fact that its whole track for some distance, fore and aft, was carefully inspected and that it was *all* in good condition, thereby seeking to show its condition at the point of the accident by proof of general inspection and general condition in the region. In such case plainly a plaintiff would be entitled to cover the same ground to controvert the character of the inspection and the general condition of the track. And in cross-examination, as here, plaintiff should have the same latitude and be allowed to cover the same ground defendant properly took the witness over, to sift the witness and test his testimony.

From plaintiff's counter-abstract it appears that is precisely what happened. By several witnesses defendant sought to show and did show that the track on the whole section, as well as in the immediate vicinity of the accident, had been put in good condition, plugged, shaped up, repaired, etc., for the winter and had been inspected from day to day for defects in roadbed, ties or rails and that none whatever existed. It was on that ground that the court allowed plaintiff to inquire of defendant's witness and to show defective angle bars several rail lengths ahead of the engine, putting its rulings on these grounds: ''It is competent on the line of your questions awhile ago.'' ''The objection is overruled for the reason you have inquired along the same lines.''

The assignment, being without substance, is disallowed.

(2) When plaintiff was on the stand she was asked this question: ''What were your expenses of the household at the time of the wreck?'' This was objected to by counsel ''as incompetent, irrelevant and immaterial.'' Then the court: ''The condition in which people live has something to do with the wife's rights and expectancy from the husband and the way he has taken care of her.'' Then defendant's counsel: ''The amount of money that they had would be the test and not what they spent.'' Thereupon the objection was overruled, and the witness answered: ''About $1,200 per year.''

Waiving the generality of the objection and passing on its merits, we can not say that the household expenses of a family, where the wife and child are without means of support and where the husband and father is furnishing the whole of it, as here, would not throw some light on the pecuniary loss of the family in the death of the husband—pecuniary loss being the measure of damages and the latter being strictly compensatory in character, as they are under the

Kansas act. In Gas Co. v. Carter, 65 Kan. 565, a case where a surviving daughter sued under the same statute, a syllabus fairly states the ruling made in that case on the measure of damages, to-wit:

"In an action for damages for death by wrongful act, it is proper to receive evidence of whatever facts made the life of the deceased of pecuniary value to the survivors entitled to sue and recover damages for the death, including the ability of deceased to earn money or accumulate property; his disposition to contribute support; his condition of health; the probable duration of his life; and also the number, age, sex, health or condition in life of his surviving children dependent on him for care, support, education, and maintenance."

That pronouncement seems acceptable doctrine and broadly sustains the ruling made by the trial judge.

Counsel hazard the suggestion that "what money they had was the test, not what they spend." So? There is quicksand there and one should sound at every step for firm ground. Does the pecuniary value of a father's life to his household hinge on the cash he has and not on what uses he puts it to—*i. e.*, on what he spends for the household, in this case $1,200? That concept not only opens a philosophical vista for the mind's eye to gaze down, but provokes at least one inquiry, thus: Is a cheeseparing, closefisted father who hoards like a miser of more pecuniary value to a mother and child than an open-handed, great-hearted gentleman whose earnings during life flow for his household as unchecked and ungrudgingly as does the love he bears them?

There is a philosophy about keeping, as over against giving, hid away as a kernel in a nut in the epitaph on an old tombstone in Doncaster, Yorkshire, worth something on the thought, to-wit:

"That I spent, that I had;
That I gave, that I have;
That I kept, that I lost."

The point is ruled against appellant.

(b)   Defendant having tendered certain evidence, which was refused, assigns error on that score, thus:

(1)   An objection was sustained to a question asked of plaintiff on cross-examination, to-wit: "Now, do you know of his (decedent's) attending to a single case in that county for the Union Pacific in the year 1907." On inquiry by the court, *viz.*, What is the purpose of it?, counsel answered: It bears on the question of the pass being "a gratuity."

We see no vice in the ruling. It was not shown that plaintiff was familiar with her husband's court business during that year in the particular in hand.

Furthermore, it stands conceded decedent got the pass in consideration, or in part consideration, for his not taking any cases against defendant during that year. So the contract runs. Decedent made a promise of that sort and kept it. In return defendant promised him a pass and gave it. These mutual and executed promises were a sufficient consideration one for the other. So that; if the witness had answered that decedent tried no cases at all for defendant during that year, that answer would not tend to show the pass was a *gratuity*. A promise may be a consideration for a promise. So, an executed promise by A is a good consideration for performance of an offer by B. [Underwood Typewriter Co. v. Realty Co., 220 Mo. l. c. 526 et seq.]

Moreover, when the question was held improper, there was no tender of proof from which we could judge whether or no the merits were affected. Did he try any or did he not? Shall we reverse on a guess on what the answer would be?

The point is ruled against appellant.

(2)    When the engineer, running the engine of the wrecked train, was on the stand for defendant, he testified in chief that he had never had a broken rail before in his experience. In spite of that fact he was asked by defendant's counsel in chief whether "from your experience a rail is more apt to break on a very cold morning than in any other kind of weather?" He was not allowed to answer and defendant saved an exception and now assigns error. Mark, the question related to his *experience,* and according to that, neither heat hindered nor cold caused a broken rail. If brittleness in steel in intense cold is a matter of expert (and is not a matter of common) knowledge, and if, absent experience, he had qualified as an expert on the effect of frost on steel in the quality of brittleness (which he did not do), the matter would take on another aspect. As it stands, it is a tempest in a teapot, much ado about nothing; for presently defendant was permitted to introduce a great body of uncontroverted testimony, from persons qualified to testify both by experience and as experts, to the effect that intense cold made steel rails more brittle. So it is obvious the trial court entertained no erroneous theory of the law and that defendant had the full benefit of all the evidence it was entitled to on that head. The case may proceed on the theory cold has a tendency to increase brittleness in steel.

We rule this point, also, against appellant.

(3)    When Mr. Roberts, one of defendant's master mechanics, was on the stand he was asked this question:

"Take a sixty-pound rail, similar to the one before you there, and such as the one you found broken at the point of the wreck, which we have inquired about and assuming that there was an old rusty crack clear across the base of the rail, an old rusty crack across the ball of the rail, and the only part of the

rail which was not broken off showed a piece about an inch in diameter in the ball of the rail, and state whether or not a rail in that condition would hold together so as to bear an engine, such as was attached to the train which was wrecked, to pass over it.''

The same question was asked of Mr. Brinkerhoff, one of defendant's superintendents, and neither was allowed to answer. We will not disturb the judgment on this ruling, because:

In the first place, there was no offer of any proof in connection with the ruling by which we can see that the merits of the case were in anywise affected. The witness might answer no, he might answer yes, or say he didn't know, or that he was not an expert, and so on "*ad lib.*" as they say in music. To reverse a judgment on the mere exclusion of a question unless thereby evidence is excluded which is shown to be material either by the context, or by the question itself, or by a direct offer of proof, is to do a hazardous and foolhardy thing. When the case goes below on such reversal the evidence elicited at the new trial on the same question may turn out to be worth nothing at all— whereby justice suffers by our action and courts are brought into reproach. We have uniformly so ruled, and the reasoning of a line of cases supports that view, *e. g.*: Hickman v. Green, 123 Mo. l. c. 179; Bank v. Aull, 80 Mo. l. c. 202; Berthold v. O'Hara, 121 Mo. l. c. 98; Kraxberger v. Roiter, 91 Mo. l. c. 408; State ex rel. v. Leland, 82 Mo. l. c. 264; Ruschenberg v. Railroad, 161 Mo. l. c. 81.

In the next place, while neither the objection nor the ruling, *nisi*, covers the question of the *competency* of the witnesses to testify as an expert, yet we find the record barren of any proof of such competency. The mere fact that a witness is a master mechanic or a railway superintendent does not qualify him to testify on the highly technical points of either the shearing strain or strength, or the tensile strain or strength, or

the thrusting strain or strength, or the bending strain or strength of a given steel rail, nor should we be put to a guess of whether such witness will ever so qualify and thereby reverse a solemn judgment of a court on such guess.

In the next place, while the court did not put its exclusion of the testimony on such ground, yet it is obvious that necessary elements are omitted from the question; for example, the condition of the angle bars, the state of the weather and the distance of the fracture from a supporting tie, the age and use of the rail, etc.

The premises considered, we rule the point against appellant and reserve the question as to whether the testimony of eyewitnesses to a fracture could be overthrown or weakened in the way indicated by the hypothetical question, to be ruled in some other case.

In leaving the matter we make this further observation: The broken parts of the steel rail were carefully collected by defendant and carried away for the purpose of examination to determine the cause of the accident and fix responsibility and liability. Now, those broken parts were not produced by defendant at the trial nor was their absence accounted for. In Kirk v. Middlebrook, 201 Mo. l. c. 288, Lord MANSFIELD's maxim (Blatch v. Archer, Cowper, 63, 65) was quoted with approval, *viz.*: "All evidence is to be weighed according to the proof which it was in the power of one side to have produced and in the power of the other side to have contradicted." That maxim is solidly fixed in jurisprudence (1 Moore on Facts, sec. 562 and cases cited), and is apposite here.

(4) Defendant offered a certain section of the Kansas statutes of 1901 adopting the common law in that State, *viz.*:

"The common law as modified by constitutional and statutory law, judicial decisions and the conditions and wants of the people, shall remain in force in

aid of the general statutes of this state; but the rule of the common law that statutes in derogation thereof shall be strictly construed shall not be applicable to any general statute of this State, but all such statutes shall be liberally construed to promote their object.''

That statute was excluded, defendant excepted, and now argues that ruling was error. We agree to nothing of the kind, because: The cause of action was a statutory one and not a transitory common law action. If it had been the latter, we would be confronted with the question of whether we would take our own view of the common law or the view entertained by the highest court in the State of Kansas. [Root v. Railroad, 195 Mo. 1. c. 370.] It is argued that the place where the common law enters into the controversy is in the proper construction of the contract for a pass and of the terms of the pass itself, touching the exemptions from liability in the ''conditions'' of the pass on the vital issue of passenger *vel non*. No decisions of the Supreme Court of Kansas were introduced tending to show that such court took any other view of the common law than that entertained in Missouri and generally elsewhere in the United States. We are pointed to no such decision holding that a person traveling on such pass is not a passenger, but is an employee, or is riding free. Eyed however critically, we can not see that the exclusion of that statute did defendant any harm. When we come to defendant's instructions we will presently see that it put to the court its construction of the contract and pass anent the exceptions in the ''conditions,'' and the question of passenger or not, and the court refused to follow the lead therein suggested. If that refusal be error defendant has the advantage of it on this record (of which more presently when we come to instructions) but barring decisions of the Supreme Court of Kansas (as here) on its construction of the common law in

that behalf, and favorable to appellant's view, there was no error in excluding the offered statute.

At the instance of defendant the court ruled out the following statute offered by plaintiff, *viz.*: "That the railroads in this state shall be liable for all damages done to persons or property when done in consequence of any neglect on the part of railroad companies." It also ruled out decisions offered by plaintiff construing that and other statutes disconnected from the one forming the basis of the suit, and seems to have earnestly tried to confine the issues to the one statute involved.

We rule the point against appellant.

(5) After bringing the instant suit in Jackson Circuit Court, plaintiff instituted another in the district court of Washington county, Kansas, on the same accident and injuries for the same sum for damages in depleting the estate of Frederick Powell, deceased. There is a section of the Kansas statutes, read into the record by defendant, *in pari materia* with the section on which the Missouri suit is based, reading:

"In addition to the causes of action which survive at common law causes of action for *mesne* profits, or for injury to the person or to real or personal estate, or for any deceit or fraud, shall also survive; and the action may be brought notwithstanding the death of the person entitled or liable to the same."

It will be observed, as a condition precedent, that said section requires death, but does not require such death to result from the injuries, whereas the section sued on in the Missouri case relates to a death "*caused* by a wrongful act or omission of another," to-wit, the injuries. On the profert of that statute and in connection therewith defendant offered the petition in the Kansas suit as an admission and an estoppel, to-wit, an admission that the injuries did *not* cause death and an estoppel against denying that fact. In

255 Mo. 29

that connection defendant offered certain decisions of the Supreme Court of Kansas holding that where the injuries cause death the suit can only be on the statute counted on in the Missouri case, but where the injuries do not cause death, but death resulted from other causes, then the suit for the depletion of the estate is on the statute defendant offered. The court excluded the petition and that ruling is challenged. Attending to the petition, it made no direct allegation on the cause of death, as presently seen. It is too long to reproduce. Briefly, it follows the averments of the petition in the instant case on the appointment of plaintiff as administratrix, on the fact that Frederick died intestate, on the incorporation of defendant, on the averments relating to the wreck, on the injuries suffered by decedent as a passenger, and on his earning capacity, etc. Finally, it alleges (quoting):

"   . . . that as a result of such injuries he suffered great pain and mental anguish from the date of said injuries and until his death on October 4, 1909.

"Plaintiff further states that prior to said injuries, to-wit, December 18, 1907, deceased was an able-bodied and industrious man, forty-six years of age, and a practicing attorney at law, at Washington, Kansas, and capable of earning and earning in the practice of his said profession from two thousand to three thousand dollars per year, but that after said injuries deceased was rendered, on account thereof, incapable of following his profession.

"Plaintiff further states that on account of said injuries deceased expended a large sum of money for medical services, medicines, hospital bills, nursing, and traveling in an attempt to be cured from such injuries in the sum of twenty-five hundred dollars.

"Plaintiff further states that the negligence of defendants consisted in allowing the track, roadbed, ties and rails to be and become in an unsafe condition for travel over the same and in operating a train upon

such track, roadbed, ties and rails which were in an unsafe condition, at an unsafe and dangerous rate of speed.

"Plaintiff further states that by reason of said injuries so received by deceased by reason of the carelessness and negligence of defendants, his estate has been depleted and damaged in the sum of ten thousand dollars.

"Wherefore plaintiff prays judgment against defendant in the sum of ten thousand dollars and for costs."

The averments of that petition do not constitute an *estoppel* under any definition known to us. By the same token they do not constitute a direct *admission* that the death occurred from other causes than the injuries received in the wreck. Indeed, if put to it we might say that a very liberal construction of the petition might be that the pleader intended to charge, and does inferentially and argumentatively charge, that death resulted from the injuries. In that view of it, the petition would be demurrable as the statement of a cause of action for the depletion of the estate of Frederick Powell. The "admission," to the contrary, if any, must be got at by inference—nay more, by piling one inference on another. It is only through the fact that the Supreme Court of Kansas has held that where death ensues from the injuries the action is on one statute, and where death ensues from other causes the action is on the other statute, and by reading those decisions into the petition, and inferring that plaintiff intended to count on the last, that an argumentative admission of the cause of death is airily built up. To be worth while for jurisprudence, an admission must *admit*. An admission in writing must admit *by the writing itself*. The touchstone is: Thus saith the writing, or thus meaneth the writing by necessary implication from the words of the writing. Now, the Kansas petition actually admits neither one way

nor the other.  Hence we are of opinion that to have allowed that petition to go in as an admission by plaintiff that death did not result from Frederick's injuries in the wreck would only litter up the minds of the jury with shadowy speculations instead of facts, and serve no useful purpose in getting at the right of the instant case.  If there were any other cause for the death of Frederick, besides the wreck and the injuries received therein, defendant had the whole wide realm of medical science and the whole fruitful field of medical experts to appeal to.  It had the facts relating to the physical condition of Powell before and after the wreck (which were an open book to be seen and read by all men) for investigation, all of which is ignored.  Wherefore, then should it be permitted to muddy the waters of this case by putting in mere inference and speculation as a solemn admission of record?

The point is ruled against defendant.

II.  *Of the instructions.*

The court on defendant's prayer instructed the jury that they should not find against defendant because its roadbed was of sand; that if they found the derailment was the result of an "accident" they should find for defendant; and that if they believed from the evidence that in his lifetime decedent could not have maintained an action against defendant, they should find for defendant; and refused to gave a series of mandatory instructions and others—some of them construing the pass and contract on defendant's theory of non-liability.  The court gave for plaintiff two instructions.  Error is assigned in refusing defendant's and giving plaintiff's instructions.  Attend to that phase of the case.

(a)  Plaintiff's instructions read:

"1.  The court instructs the jury that if you find for plaintiff then you should assess her damages, if

any, at such sum, if any, as you believe and find from the evidence to be a fair and just pecuniary compensation, only, for damages, if any, to her and her daughter, Marjorie Powell, occasioned by the death of Frederick Powell, not exceeding the sum of ten thousand dollars.

"2. The court instructs the jury that Frederick Powell was a passenger upon defendant's train on the 18th day of December, 1907, at the time it is claimed he was injured; then having received him on board such train, the defendant was under obligation to him to use the highest degree of care practicable among prudent, skillful and experienced men engaged in the same kind and character of business in which defendant was engaged to carry him safely, and a failure of defendant (if you believe there was a failure) to use such highest degree of care would constitute negligence on its part; and if you believe from the evidence that the train upon which deceased was riding was wrecked, the presumption is that such wreck was occasioned by some negligence of the defendant, and the burden of proof is cast upon defendant to rebut this presumption of negligence and establish the fact that there was no negligence on its part and that the injuries to Frederick Powell, if any, was occasioned by inevitable accident or by some cause which such highest degree of care would not have avoided."

(1) It is argued that the first instruction assumes the injuries caused the death of Frederick. We may be pardoned for not agreeing with counsel. It says *"if* you find for plaintiff, *then,"* etc., and makes no assumption at all. It is only an instruction on the measure of damages in the contingency and on the hypothesis the jury first find for plaintiff. The elements to be considered by the jury in making this finding for plaintiff, if they do, are not dealt with at all by the instruction and are not usually dealt with

in one on the mere measure of damages, filling no office in instructing on the whole case.

Furthermore, and most of all, defendant below stood mute and asked no instruction on the measure of damages. It pitched its battle at other points. It exhausted its solicitude elsewhere and on other questions. It may not now, with its corporate heart bowed down with the woe of defeat, and its corporate eyes washed and brightened by the tears of affliction, elicit appellate interest in a matter it cared nothing about below. Browning v. Railroad, 124 Mo. 55, was in Banc. We copy as apposite the unanimous pronouncement of all the sitting brethren (pp. 71-72):

"The instruction on the measure of damages is also assailed as error.

"The instruction was in these words: 'If the jury find for the plaintiff they will assess her damages at such sum as in their judgment will be a fair and just compensation to her for the loss of her husband, not exceeding the sum of $5,000.'

"The defendant asked no instruction on the measure of damages whatever. No attempt was made by it to point out the proper elements of damage in such cases or to modify the general language of the instruction.

"The instruction is not erroneous in its general scope; and if, in the opinion of counsel for defendant, it was likely to be misunderstood by the jury, it was the duty of the counsel to ask the modifications and explanations, in an instruction embodying its views.

"The court is not required in a civil case to instruct on all questions, whether suggested or not, and as there is nothing in the amount of verdict to indicate that the jury were actuated by any improper motive in their assessment, the general nature of the instruction is no ground for reversal."

The Browning case has been followed early and late on the identical point—e. g. King v. St. Louis, 250

Mo. l. c. 514; Harmon v. Donohoe, 153 Mo. l. c. 275; Smith v. Fordyce, 190 Mo. l. c. 30-1; Waddell v. Railroad, 213 Mo. l. c. 20.

In Wheeler v. Bowles, 163 Mo. l. c. 409, there was an instruction couched in as general and "chameleon-hued words" (to borrow a phrase from Professor Hohfelt) as the one in judgment. It was challenged and to that challenge (referring to the Browning case) we said:

"As to this point it is only necessary to remark that this is a civil action and mere nondirection is no ground of error in this court. The defendant did not submit any instruction on the elements of damages, neither did plaintiff. If defendant desired the jury restricted to certain elements he should have offered an appropriate instruction on that subject."

In Minter v. Bradstreet, 174 Mo. l. c. 491, the following instruction, given in Tetherow v. Railroad, 98 Mo. 74, on the measure of damages (omitting all elements) was approved, *arguendo*:

"The jury are instructed that if you find for the plaintiff, you may, in your verdict, give her such damages, not exceeding five thousand dollars, as you may deem fair and just under the evidence in the case, with reference to the necessary injury resulting to her from the death of her husband."

In Barth v. Railroad, 142 Mo. l. c. 555, the following instruction was approved:

"The jury were instructed that if they found for plaintiff they would award her 'such damage not exceeding five thousand dollars as you may deem fair and just under the evidence in this case with reference to the necessary injury resulting to her from the death of her husband.'"

It is argued that the jury, under the loose language of the instruction, might have included in their estimate pain and anguish suffered by decedent as well as the sorrow plaintiff suffered over his death, etc.

It is argued (also) that the court should have defined "pecuniary compensation." In the law of damages in the very nature of things, "pecuniary loss" lies within the concept (speaking complementally) of "pecuniary compensation," and that term, without explanation or definition, is a favorite phrase in Kansas judicial exposition and seems to be allowable language in addressing a jury on a rule of law. [Railroad v. Townsend, 71 Kan. 1. c. 529 et seq.] Presumably the jury were intelligent and honest men and attentive to their oaths. [Shinn v. Railroad, 248 Mo. 1. c. 182.] Certainly nothing in their verdict points to the contrary. If defendant feared that, forgetful of their oaths as jurymen, they would wander into by and forbidden paths of conjecture unless fenced in by more simple phraseology, or hedged about by limitations on the elements constituting the damages, it should have tried to help itself at the very time of need, to-wit, at the trial.

In Morgan v. Mulhall, 214 Mo. 451, our statute regulating instructions was under exposition (Sec. 1987, R. S. 1909). We there held that its language was permissive. In other words, a party had the option to ask or not ask instructions, that the court owed no duty to either party to give instructions either on its own initiative or in lieu of those refused. Indeed, it has always been held that the rule in criminal cases in that regard did not apply in civil. Take, to illustrate, the case of Clark v. Hammerle, 27 Mo. 1. c. 70: "In the trial of causes," says Judge Scott, "neither party is bound to ask instructions. If they are not asked, the giving them or not is at the discretion of the court." Cases at law frequently come to this court without any instructions at all asked or refused on either side. In such event the only issue on appeal may be whether the petition states a cause of action, or whether a demurrer to the evidence should have been sustained, or whether the judgment is responsive to

the pleadings, or a motion in arrest would lie. We cite at random Cook v. Railroad, 63 Mo. 1. c. 401, as a sample of a law case with no instructions. In Morgan v. Mulhall, supra, referring to the statute cited, this court said (pp. 463-464):

"In construing that section, the better view is that it is permissive, not mandatory. Doubtless it conduces to the science of jurisprudence and the orderly administration of the law to have instructions defining the issues, putting it to the jury to find the fact and declaring the law on the fact when found, but it is within the knowledge of the profession (and our decisions show) that cases are not infrequently tried, *nisi,* without them. That mere nondirection is not misdirection is a familiar, settled rule of appellate procedure. Under that rule, before appellant can predicate reversible error on what a trial court does not say to the jury, he must first put the court in the wrong by asking it to say something, or else the court in trying to cover the case by instructions holds a false voice, or omits in general instructions essential elements of the case."

The point is ruled against appellant. But in ruling after that fashion, nothing we have said is to be construed as favoring the submission of a cause to a jury without proper instructions on the rules of law applicable to the evidence and covering the whole case on issues essential to recovery. By virtue of the statute cited, instructions must be in writing. So, observe, no matter which side asks them, they are, when given, the instructions of the court. In other words the court is the preclusive mouthpiece of the law *on the law.* The question is not here for decision, therefore, a ruling thereon is reserved; but if the question were here, whether an attorney could argue the law (and thereby virtually orally instruct the jury on the law), absent instructions on the law by the court, we would hesitate long and ponder well before we

held such a course would not be reversible error. A word to the wise is sufficient. In leaving the matter the fit observations of my brother GRAVES in Eversole v. Railroad, 249 Mo. l. c. 529, may be read with profit by the bar.

(2) Plaintiff's instruction number two is challenged, because, as we gather, it does not cover all the issues and because it erroneously declared the law on the issue as to whether decedent was a passenger at the time of his injury. As to that we say: The instruction does not purport to be a general instruction coercing a verdict whether or no if the facts hypothesized therein are found by the jury to exist. In a demurrer to the evidence, in the form of a mandatory instruction, defendant challenged plaintiff's right to a verdict on the pleadings and facts. When we come to the mandatory instruction the question whether decedent, as a matter of law, was a passenger (as declared by the instruction) will be considered. Barring for the present that view of it, we see nothing wrong with the instruction. It is a replica of an approved instruction in Price v. Railroad, 220 Mo. l. c. 444. In plaintiff's brief it is presented in a parallel column with that in the Price case and, on inspection, they disagree in nothing material. It states the law on the doctrine of *res ipsa loquitur*, the shifting of proof and the character of care due from a carrier to a passenger in an acceptable way. [Stauffer v. Railroad, 243 Mo. l. c. 316 et seq.; Railroad v. Elder, 57 Kan. 312.] So that, barring the question whether decedent was a passenger, the instruction was well enough.

(b) The court, as said, refused a mandatory instruction in the nature of a demurrer to the evidence coercing a verdict for defendant. It also refused for defendant a series of instructions approaching the issue of the relation between decedent and defendant carrier from several angles, but all of them meaning as a matter of law decedent was not a passenger.

A proper disposition of the demurrer will dispose of all of them and they call for no consideration *seriatim.* The court also refused to take away from the jury a consideration of the suspended joint.

(1)  In the matter of the suspended joint it is argued there was no evidence showing it had anything to do with the derailment. We do not read the record in that way.    There was evidence that suspended joints, under  certain circumstances, were allowable construction, when the ties on both sides were sound and when the angle bars were spiked to them. But there was also evidence tending to show that to have a joint spliced with angle bars and directly over a solid tie would be better than a suspended joint. But in this case, there was evidence of bad ties close to the joint, and no evidence that the angle bars were spiked to the ties. So, there was evidence of imperfect angle bars at the place. Hence the court did right in not taking the suspended joint from the jury. It was a fact belonging in the case to be considered for what it was worth.

We rule the contention against appellant.

(2)  We now come to the demurrer. Let it stand conceded that plaintiff cannot recover unless the evidence connected decedent's injuries received in the wreck with his death. The evidence did that emphatically and to an eminent degree. The justice of the verdict in that particular is entirely consonant with the broad, uninterrupted and irresistible current of the evidence. I can add nothing on that score to the observations made in MacDonald v. Railroad, 219 Mo. l. c. 480 et seq., and in Sharp v. Railroad, 213 Mo. l. c. 531 (*q. v.*).

Moreover, one would read this record with flippancy, if he did not see writ large there the pregnant fact that defendant refused to take militant issue on the question whether the injuries of decedent caused his death, and did not see that the defendant was

relying on the terms and conditions of the pass for a defense and not on the absence of causal connection between decedent's injuries and his death. I think any one reading the record with a passion for justice and a benevolent intention to get at the truth would come to that conclusion.

But it is said that the question whether the injuries caused the death was not put to the jury in any instruction. That is true, and if the testimony did not satisfactorily connect the two events in the relation of cause and effect, the demurrer would search the fact and lie. But such is not the case. The demurrer was, therefore, well ruled in that particular, and if defendant thought that issue should have been presented to the jury, to find as a fact, it was as much to blame as was plaintiff for not presenting it. It is a typical case of *non*direction not *mis*direction, and therefore not reversible error under any rule of law known to me in this jurisdiction.

But it is argued with animation and ingenuity that decedent was not a passenger, *ergo,* the demurrer lay and plaintiff's instruction number two was bad.

Attend to that view of the matter. The contract between defendant, acting through Loomis, its general attorney, and decedent, was silent on the peculiar "conditions" emblazoned on the back of the pass. It called for a pass with geographical and train limitations alone. Decedent agreed to accept such a pass as a "retainer." In consideration for the pass decedent was to take no cases against defendant in Washington county and was to aid defendant's attorneys in "local legal affairs." The gist of the matter was that defendant offered and issued transportation in return for decedent's promise of service in local legal affairs and as a consideration for his taking no cases against defendant. As already said elsewhere in this opinion, the consideration was ample and legal, and, so far as this record shows, the contract was fully performed on

decedent's part and defendant issued the pass. Its back narrates that it "is a free pass, based upon no consideration whatever." Why vice-president Mohler, who issued the pass, should gravely make a statement so wide of the truth is not explained on this record. Possibly those words were printed on the back of all passes issued by this company, and the vice-president, without taking pains to read the contract, inadvertently used such form as had been provided for use for free passes. There follows that statement a remarkable aggregation of limitations, everyone repugnant to the law as a limitation of liability on tickets or other tokens used for railway transportation when issued on sufficient consideration, as here. The conditions declare nonliability for negligence under any circumstances, criminal or otherwise, for any injury to the person of the pass-user, and (as part and parcel of the same illegal aggregation of limitations and directed to the same illegal purpose) there is the further declaration that as to such person defendant is not a common carrier or liable as such. If, indeed and in truth, the transportation had been free and had not been sold for a price, to-wit, services to be rendered and as a retainer interdicting decedent's taking any cases against defendant, then we would have had a different case than the one now in judgment—one on which we are not called upon to express an opinion at this time. It is vain to interpose as a defense on such a record as this, as defendant does, propositions relating to the constitutional right of freedom of contract or those guaranteeing due process of law and equal protection of the law. The right doctrine is that under the police power the freedom to contract may be regulated by law where the public health, public safety, public morals or public welfare call for it. [Shohoney v. Railroad, 231 Mo. l. c. 154 et seq.; State v. Railroad, 242 Mo. l. c. 378 et seq.]

Coming still closer home, the rule is that under a wise and settled doctrine of public policy common carriers for hire are denied the right to contract against liability for negligence in the carriage of passengers. The carrier may stipulate anent its liability and for exemptions, but such stipulation must be just and reasonable in the eye of the law. So, the rule is that a person using a pass for transportation, issued on a sufficient consideration, as did Powell, is a passenger to all intents and purposes and is under the protection of the rules of law prescribing the duties of a carrier to a passenger. [2 Hutch. Car. (3 Ed.), secs. 997, 1073, 1004; Railroad v. Stevens, 95 U. S. 655; Railroad v. Lockwood, a great case, 84 U. S. (17 Wall.) 357; C. B. and Q. Ry. Co. v. Williams, 200 Fed. 207; Carroll v. Railroad, 88 Mo. 239; Cherry v. Railroad. 191 Mo. l. c. 518 (we quote infra from the Cherry case); Railroad v. Southern Railway News Co., 151 Mo. l. c. 387; Jones v. Railroad, 125 Mo. 666; McNulty v. Railroad, 182 Pa. St. 479; Williams v. Railroad, 18 Utah, 210; Den. & B. P. R. T. Co. v. Dwyer, 20 Colo. 132; Doyle v. Railroad, 166 Mass. 492; Peterson v. Traction Co., 23 Wash. 615; Harris v. Railroad, 52 Wash. 289; Dugan v. Railroad, 193 Mass. 431; Eberts v. Railroad, 151 Mich. 260.]

It appears the Kansas doctrine is not out of line with our own and our own is well formulated in the Cherry case supra, thus:

"A multitude of cases could be cited bearing upon the question under consideration, but as there is an irreconcilable conflict between the adjudications, the foregoing is sufficient to show that whilst in England it is held that a railroad company may by special contract, either expressly or impliedly agreed to by the passenger, limit its liability, and prescribe rules of procedure in cases like the case at bar, still the American rule has long been settled that a railroad company cannot, even by an express contract, signed by

the passenger, limit its common law liability for neg-
ligence, and the rule is equally as well settled that no
provision contained in the ticket will be binding upon
the passenger whether expressly or impliedly accepted,
unless such provision is a just and reasonable one in
the eye of the law.   The reason underlying the rule
is, that while, ordinarily, the courts will enforce con-
tracts made by persons who are *sui juris,* still the pub-
lic has an interest in contracts for carriage of pas-
sengers, and the law will require them to be just and
reasonable, even if the passenger had not so required
or had otherwise expressly agreed.''

We hold the demurrer well ruled.

With the foregoing ruling made on the demurrer,
there fall out of the case all questions on the other
instructions asked  and refused  for  defendant; for
singly and as a body they one and all presented views
*contra* to those expressed.

We have not followed counsel in all the ramifica-
tions of their elaborate and skillful argument, but have
considered them all and announce our conclusion to be
that the case was well decided.   Let the judgment be
affirmed.   It is so ordered.   All concur.