# ERNEST MORGAN v. ZACH MULHALL, Appellant.

### Division One, November 25, 1908.

1. **NEGLIGENCE: Shooting Another: Whose Bullet: Jury Question.** Where in a general melee and scuffle several shots were fired, and the case is presented to this court on defendant's theory that defendant shot at another party, a dangerous and desperate character, missed him and the bullet wounded plaintiff, there is no longer any issue, in the face of the jury's verdict for plaintiff, as to whether defendant's bullet or that of the person shot at injured plaintiff.

2. ——: ——: **Self-Defense: Misadventure.** Where the defense at the trial was that defendant was feloniously set upon by another, who shot at him, and in battling for his life he shot at such other in self-defense and by innocent slip and misadventure shot wide of his mark and hit the plaintiff, an innocent bystander, and that issue was presented to the jury and there was substantial evidence to sustain their finding that the wounding of plaintiff was not the result of self-defense or misadventure, the verdict cannot be set aside on that theory of defense.

3. ——: **Pleading: General Charge: Sufficient.** Where the petition charges that on a named date and place "the defendant by shooting into a crowd of people negligently shot the plaintiff with a pistol," it charges an actionable wrong, and at the worst negligence in general terms, and, absent a motion to make more certain and specific, and absent any objection to its sufficiency prior to verdict, it is good after verdict. But it is more than a general charge of negligence; the character of the negligence is defined. It was not necessary to allege that defendant was under a social duty not to shoot plaintiff negligently and that he violated that duty, nor the size or character of the bullet.

4. ——: **Shooting Another: Prima-Facie Case.** If plaintiff shows that defendant shoots in his direction and wounds him, he makes out a prima-facie case for damages, and it then devolves on defendant to show that the shooting occurred without fault on his part, or to put in evidence mitigating facts.

5. ——: ——: **Shooting into Crowd: Proof.** Where the allegation is that "the defendant by shooting into a crowd of people negligently shot the plaintiff with a pistol," the burden does not rest upon plaintiff to show that in fact a "crowd of people" was shot into, if it is shown that defendant negligently

shot plaintiff. The law under such circumstances concerns itself little with the size of the crowd. The gravamen of the charge is the careless and negligent shooting. If that is shown, there is no variance, though the evidence shows only the plaintiff and the two or three others shot at, or, as in this case, a dozen or more, to be present, at the time defendant was shooting at one Reed, and shot plaintiff, Reed and another.

6. **INSTRUCTIONS: Non-direction: None on Issue of Negligence.** Where plaintiff charged that he was negligently shot by defendant, and sued for damages, and asked no instruction on the issue of negligence, nor on issues relating to the defenses, but only asked correct instructions on the credibility of witnesses and the measure of damages, and defendant neither prayed nor was given any instruction, but stood mute, it was not error not to give instructions bearing on the issue of negligence or on the mitigating defenses. Mere non-direction is not reversible error. The statute does not require instructions in a civil case whether or no, but is permissive, not mandatory. Besides, the non-direction was a common error, and error common to all is not reversible error. If defendant did not ask for instructions, he cannot complain that they were not given.

Appeal from St. Louis City Circuit Court.—*Hon. O'Neill Ryan,* Judge.

AFFIRMED.

*T. J. Rowe, Thos. J. Rowe, Jr.,* and *Henry Rowe* for appellant.

(1) The petition fails to allege facts sufficient to constitute a cause of action. The cause of action is alleged in one clause of a sentence. The cause of action as alleged is as follows: "The defendant by shooting into a crowd of people negligently shot the plaintiff." There is no allegation that he improperly or negligently or carelessly or illegally, or improperly or wrongfully shot into a crowd of people. There can be no inference that the act of shooting into the crowd of people was wrongful or unlawful; the inference must be that it was both lawful and proper. It is plain that the petition states no cause of action, and a cause of action cannot be gleaned from same.

(2)  There is a fatal variance between the allegations of the petition and the proof—the evidence for plaintiff tended to prove that defendant in self-defense shot at Frank Reed and that the bullet intended for Reed struck Morgan. There was no evidence that he shot into a crowd. There is an entire difference between the *allegata et probata*. (3)  Only two instructions on the law of the case were given and both were given at the instance and request of plaintiff. Instruction 1 merely indicated the measure of damages—no instructions were given on the issues. Such an instruction standing alone is clearly erroneous. Boyd v. Railroad, 108 Mo. App. 303; Scanlan v. Gulick, 199 Mo. 449.

*Thomas F. Galt* for respondent.

(1)  The petition states a cause of action in that it states a general charge of negligence. Conrad v. De Moncourt, 138 Mo. 325; Murdock v. Brown, 16 Mo. App. 549; Dolan v. City of Moberly, 17 Mo. App. 436; Dieter v. Zbaren, 81 Mo. 612. (2)  The petition states that the defendant negligently shot the plaintiff. Plaintiff proved that there was a crowd at the place where the defendant shot. Instruction 1, indicating the measure of damages in the event of a verdict for the plaintiff, was sufficient. R. S. 1899, sec. 748; Wilson v. Railroad, 122 Mo. App. 677; Nolan v. Johns, 126 Mo. 159; Minter v. Bradstreet Co., 174 Mo. 444; Browning v. Railroad, 124 Mo. 55; Dury v. White, 10 Mo. 354; Bank v. Ragsdale, 171 Mo. 618.

LAMM, J.—Suing Mulhall, Ernest Morgan by his next friend asked $20,000 damages, grounding his right · of action on a negligent shooting and wounding. At a trial with the aid of a jury, he got a verdict of $5,000. From a judgment entered, defendant appeals.

The petition follows:

"The plaintiff for his cause of action showeth

to the court that on the 24th day of May, 1905, upon the petition of said Ernest Morgan the said circuit court did appoint Joseph Morgan as his next friend to commence and prosecute this suit, and said Joseph Morgan has consented in writing to act as such next best friend for said purpose.

"And the plaintiff further showeth to the court that on the 18th day of June, 1904, in said city of St. Louis and on the grounds of the Louisiana Purchase Exposition Company, the defendant by shooting into a crowd of people negligently shot the plaintiff, Ernest Morgan, with a pistol; that by said shooting the bowel of plaintiff's abdomen was perforated in front and rear, and plaintiff's hip socket was smashed and the head of his thigh bone destroyed; that it was necessary for the surgeon in treating said wounds to cut open plaintiff's abdomen and close the bowel where perforated, and thereafter to cut off and remove the head of the said thigh bone; and as a further result of said injuries Bright's disease was developed in plaintiff; that plaintiff's life was saved by the surgeon, Dr. L. H. Laidley; but plaintiff suffered on account of said injuries most excruciating pain and anguish of body and mind, his constitution has been permanently weakened, his leg permanently shortened, and he now suffers and will continue to suffer great bodily and mental pain and anguish, all to plaintiff's damage in the sum of $20,000, for which amount and his costs he asks judgment against the defendant."

The answer was a general denial.

The court, on plaintiff's prayer, gave two instructions, viz.:

"1. The court instructs the jury, that if you find for the plaintiff, you will, in assessing the damages, award him such sum as you believe from the evidence will reasonably compensate for the physical pain and mental anguish, if any, you believe he has suffered

occasioned by said injuries, and the physical pain and mental anguish, if any, you believe from the evidence will result to the plaintiff from said injuries in the future.

"2. The court instructs the jury that you are the sole judges of the credibility of the witnesses and the weight to be given to their evidence. And in passing upon the credibility of a witness, the jury are at liberty to take into consideration his or her manner upon the witness stand; the interest he or she may manifest, if any, in the case; the reasonableness or unreasonableness of his or her testimony as compared with the other testimony in the case. And the court instructs the jury that if you find and believe that any witness willfully testified falsely to any material facts, you are at liberty to reject the whole or any part of such witness's testimony."

The court of its own motion instructed the jury how to return their verdict if nine concurred, and how if there was a unanimous verdict.

The defendant asked no instructions.

It appears that plaintiff, in nowise to blame, on the date and at the place alleged in his petition was wounded by a pistol bullet. That he received the grievous hurts alleged in his petition was shown, and not challenged by any proof. As no question is made over the amount of the verdict, the details become unimportant on appeal.

There was substantial evidence tending to show he was hit in the abdomen by a bullet from a pistol fired by defendant. That defendant had a pistol and fired it more than once is not denied by him or his witnesses. They content themselves with putting in evidence to the effect that in a scuffle and melee other shots were fired by other parties, and tending to show it was not a bullet from Mulhall's firearm that struck Morgan. But in this court the cause is submitted by

defendant's counsel on the theory (to use their own words) that: "On June 18, 1904, on the grounds of the Louisiana Purchase Exposition Company defendant shot at Frank Reed, a dangerous and desperate character, missed him and the bullet wounded plaintiff in the abdomen."

With this frank admission in the case, it is waste of time to state the evidence on the issue as to whether defendant's bullet or another's did the mischief. The jury settled that and defendant bows to the verdict.

As said, defendant put in testimony tending to sustain a theory of self-defense—i. e., that he was feloniously set upon by one Reed, a desperado, and in battling for his life, by innocent slip and misadventure, shot wide of his mark and (by chance medley) hit Morgan, a non-participating bystander. That issue was threshed out at the trial and the jury found against the theory of self-defense and misadventure. In the face of this finding, we do not read counsel's brief as insisting there was no substantial testimony on that score on which the verdict could stand. Therefore, it is not incumbent on us to emblazon on judicial pages (and thus embalm) the causes leading up to the rowdy war and its bloody incidents. The prying mind may find them once spread of record in State v. Mulhall, 199 Mo. 202—once is enough.

Any other facts essential to understand and determine the case will appear in connection with a consideration of the several assignments of error, which are:

(1)   "The petition fails to state facts sufficient to constitute a cause of action."

(2)   "There is no allegation in the petition that defendant wrongfully or carelessly or negligently shot into a crowd of people."

(3)   "There is a fatal variance between the allegations of the petition and the proof. There is no

evidence that plaintiff shot into a crowd of people.''

(4) ''Instruction number one, given on behalf of the plaintiff, merely indicated the measure of damages in the event of a verdict for plaintiff, but did not state the issues nor specify the facts which must be found to warrant a verdict for him.''

I. The first two assignments of error may be considered together.

(a) Does the petition state a cause of action?

We think so. It is uncommonly laconic and crisp in its charging part, but well charges that plaintiff was negligently shot by defendant with a pistol and that averment charges an actionable wrong. At the very worst, the most that can be said against it is that it is a general charge of negligence. On that view, absent a motion to make more certain and specific, absent any objection to its sufficiency prior to verdict (as here), the petition must be held good after a verdict. So runs the case and the general law. [Schneider v. Railroad, 75 Mo. 295; Mack v. Railroad, 77 Mo. 232; Dolan v. Moberly, 17 Mo. App. 436; Dieter v. Zbaren, 81 Mo. App. 612; LeMay v. Railroad, 105 Mo. 361; Conrad v. DeMontcourt, 138 Mo. l. c. 325; Rinard v. Railroad, 164 Mo. l. c. 285, *et seq.;* 29 Cyc. 570, *et seq.;* 6 Thompson's Negligence, sec. 7447.]

But the averment is more than a general charge of negligence. The character of the negligence is defined. If we look to the reason of the thing or to the justice of the concrete case, then it is sure defendant suffered no surprise or other wrong by the condensed phrasing of the petition. This becomes clear because he was thereby informed of the case he had to meet—of the ultimate fact complained of, *viz.*: a negligent shooting, with time, place and firearm added. It was not necessary to allege that defendant lay under a social duty not to shoot Ernest Morgan negligently and that he violated that duty; for, peradventure, all

of us live, move and have our being under an implied term in the social compact, *viz.*: that a cowboy may not shoot one or the other of us negligently. No man has to prove such duty. Why, then, allege it in terms or its violation? No more need the size or character of the bullet, whether quail-shot or dum-dum, be alleged. Here the shot is alleged, so is its effect, and that it was fired wrongfully and by defendant. From these averments, the case defendant had to meet was well ear-marked and identified. And defendant was not misled or put at fault; for he met the charge in its entirety by proof that he acted in self-defense (if he fired the shot), and by other proof tending to show that another—an unknown person—fired it.

(b) It is next argued that the petition does not sufficiently aver that defendant negligently or wrongfully shot into a crowd of people. Let us see about that. The allegation is that "the defendant by shooting into a crowd of people negligently shot the plaintiff, Ernest Morgan, with a pistol." Now, the pleader might have expanded his phrase and alleged that: "the defendant, by shooting into a crowd of people negligently, negligently shot the plaintiff Ernest Morgan, with a pistol," but he did not do so and, however shrewdly analyzed, the allegation made amounts at the end to the same thing as the allegation supposed. If A negligently or unlawfully shoots into a crowd and thereby hits B with a pistol bullet, that is the statement of an actionable wrong in B.'s favor against A. If A negligently shoots B with a pistol bullet by shooting into a crowd of people, the terms are somewhat reversed but the negligence is the same in each instance—in both it was the negligent use of a deadly weapon with resulting harm.

The two assignments of error in hand are unsound, and, hence, are disallowed.

Morgan v. Mulhall.

II. It is next contended there is no evidence that defendant shot into a crowd of people and, therefore, there is a fatal variance between the allegations of the petition and the proof. If A negligently shoots in the direction of B and hits him, A ought to make amends for his negligence. It would be a sad state of the law to hold it not so. Therefore, the presence of a crowd into which a negligent shot is fired would not be an indispensable averment to a cause of action. So, by the same token, if the negligent shot was in the direction of and hit one member of a crowd, an action would lie. If, however, it be allowed to defendant in this case that he is called upon to answer only a negligent firing *into a crowd,* and if it be allowed to him to say that if a crowd was not in the direction of his firing he should escape liability, though he negligently hit an individual—we say, although all these things be allowed to this defendant—yet manifestly on that view of the case the law ought to concern itself but little about the *size* of a crowd fired into. There is much in little under such circumstances and that little goes a great ways. Indeed, there may be said to be a primal and rooted antipathy in the breast of civilized man against carelessness in shooting. For example, was not Robert Burns so concerned over promiscuous and miscellaneous gun firing that when the shadows of death were gathering about him he waived the honor of a militia salute with its attendant pomp and circumstance, and by his last breath did he not request that the awkward squad should not fire over his grave?

But, eschewing sentimental conceits and coming to the cold technical law, it has been held that in an action for damages sustained from injuries caused by an unlawful and wrongful assault and shooting, plaintiff is *prima facie* entitled to a verdict upon proof that he was shot by defendant; it then devolves upon defendant to show that the shooting occurred without

fault on his part, or to put in evidence mitigating facts; it is not necessary that plaintiff, in the first place and by direct evidence, should show either an intention to commit the injury or that defendant was in fault. [Conway v. Reed, 66 Mo. 346; Orscheln v. Scott, 90 Mo. App. l. c. 366, *et seq.*] That is to say, a plaintiff, hit by a bullet, may identify the shooter, prove the hit and quit. At that point the burden shifts, and the law, as well as the good sense of it, puts the boot on defendant's foot and the laboring oar in his hands—he must justify or otherwise lawfully excuse the shot.

However, conceding, *arguendo* (without holding), that counsel's construction of the pleading is correct and that plaintiff is held strictly to the literal allegation of a "crowd," yet we are of the notion, as said, that in Missouri two or three would constitute a "crowd" for firing purposes under the averments of the petition.

On this view, the crowd was there. The record shows the fracas occurred inside and close to the entrance of a "wild west show" with which defendant was connected as a star actor in a cowboy role. The entrance was on the "Pike" at the late Louisiana Exposition in St. Louis. Plaintiff had been to the show, had left the arena at half past 10 p. m. and was going out through an uncovered alley or passageway to said entrance on the Pike when he came upon four or five men scuffling in the passageway. The record shows that just before and at the time the first shot was fired there were present at least the plaintiff, Reed, one Jordan, "Nebraska Bill," Mulhall, Mrs. Edwin, Chas. Bishop, Louis Young, Mrs. Bishop, John Murray, Geo. Williams, J. S. Williams, Williams' little boy and Judge Corbett. Defendant fired three shots and there was an interval between them. After the first shot and before the second there is testimony that a crowd gathered. The third shot struck the plaintiff who was

retreating.  More than one witness speaks of a crowd being present.  There was an issue as to the direction of the firing and the presence of the crowd in the firing line would depend a little on the view the jury took of the testimony on that issue.  Murray was shot in the stomach.  Reed was shot in the neck.  Morgan was shot in the bowels.  These results speak loudly and point to a crowd.  The witness Young testified he was outside of the wild west show, right in front, and that he saw "Mr. Mulhall and a crowd coming" and then saw the scuffle, then there was a couple of shots fired and then it seemed to him a dozen more and "*they* (the people) knocked me down; I was trying to get out of the way myself."  Other witnesses speak of a "big rush."  Another witness speaking of the scuffle, said: "Somebody jumped on him (Reed) and some got Mulhall around the neck and some got Reed around the neck, three or four scuffling with the gun, and when it went off it created pandemonium, *everybody went in all directions.*"  The record shows that mysterious and unnamed persons approached Mulhall and talked to him as he was going to war and close to the battlefield.  Flitting dimly through the testimony, as in a fog or vision, are seen crouching figures, some firing, others retiring and others dodging.  Undoubtedly a crowd was there, but even on defendant's own theory there were two persons in the line of his last shot, to-wit, Reed and Morgan.  That, as said, was "crowd" enough under a liberal interpretation of the pleadings for the purposes of justice.

The point is disallowed to defendant.

III.  Defendant stood mute and neither prayed nor got any instructions whatever.  Plaintiff asked none on the trial issue of negligence nor on issues relating to the defense.  He asked and got two—one on the measure of damages, the other a rule of law relating to the credibility of the witnesses and the weight

of their testimony. In this state of the record, defendant does not contend the instructions given were bad law in and of themselves, but his counsel insist it was error to not give instructions bearing upon the issues and announcing rules of law by which the jury could be guided to a just verdict on them.

Is there merit in this contention? No, because:

(a)   We are cited to Scanlan v. Gulick, 199 Mo. 449, as authority for that position. But that case is not in point. In that case a general instruction covering the issues was rightly refused because it omitted to state a material issue. It simply announces the hornbook doctrine that a single instruction, intended to cover the whole case, should cover it. The instruction was refused because it left out the question of the *bona fides* of two instruments of writing vitally bearing upon the pivotal issue, and directed a judgment without requiring the court to consider a material question presented by the evidence.

Counsel lean on Boyd v. Railroad, 108 Mo. App. 303, as a staff. That case seems somewhat in point. But if it holds as counsel argue, then it is not well reasoned and we will not follow it. See, in this connection, Wilson v. Railroad, *infra.*

(b)   An excellent law writer states the general doctrine in civil cases to be: "It is, then, a general rule of procedure, subject, in this country, to a few statutory innovations, that mere *non-direction, partial or total,* is not ground of new trial, unless specific instructions, good in point of law and appropriate to the evidence, were requested and refused. A party cannot, by merely excepting to a charge, make it the foundation for an assignment of error, that it is indefinite or incomplete."    [2 Thompson on Trials, sec. 2341]. Judge Thompson supports his text by a wealth of authorities in a note, adding: "The English rule seems to be that non-direction, where specific direction is not

requested, is no ground of new trial, unless it produce a verdict against the evidence.'' [Citing Ford v. Lacey, 30 L. J. (Exch.) 351; Railroad v. Braid, 1 Moore, P. C. Cas. (N. S.) 101.]

, To question that general rule in Missouri at this late day would be to spin cobwebs before the eyes of justice and mischievously unsettle the law. This is so because our statute on procedure in civil cases does not contemplate instructions whether or no. Parties litigant have their option to ask or not ask them. That statute ordains (R. S. 1899, sec. 748): ''When the evidence is concluded, and before the case is argued or submitted to the jury or to the court sitting as a jury, either party *may* move the court to give instructions on any point of law arising in the cause, which shall be in writing and shall be given or refused. The court *may* of its own motion give like instructions, and such instructions as shall be given by the court on its own motion or the motion of counsel shall be carried by the jury to their room for their guidance to a correct verdict according to the law and evidence; which instructions shall be returned by the jury into court at the conclusion of the deliberations of such jury, and filed by the clerk and kept as a part of the record in such case.''

In construing that section, the better view is that it is permissive, not mandatory. Doubtless it conduces to the science of jurisprudence and the orderly administration of the law to have instructions defining the issues, putting it to the jury to find the fact and declaring the law on the fact when found, but it is within the knowledge of the profession (and our decisions show) that cases are not infrequently tried, *nisi*, without them. That mere non-direction is not misdirection is a familiar, settled rule of appellate procedure. Under that rule, before appellant can predicate reversible error on what a trial court does not say to the jury, he

must first put the court in the wrong by asking it to say something, or else the court in trying to cover the case by instructions holds a false voice, or omits in general instructions essential elements of the case. [Tetherow v. Railroad, 98 Mo. 74; Coleman v. Drane, 116 Mo. l. c. 394; Browning v. Railroad, 124 Mo. 55; Nolan v. Johns, 126 Mo. 159; Wilson v. Railroad, 122 Mo. App. l. c. 672, *et seq.*, and cases cited; Nugent v. Armour Packing Co., 208 Mo. l. c. 500; Flaherty v. Railroad, 207 Mo. l. c. 339.]

Here, manifestly, appellant was as much to blame as the court or respondent for the omission to instruct on vital issues; for he by his silence joined in the general silence and made it more profound. At most it was common error, if any, and error common to all is not reversible error. He who does not speak when he should, will not be heard to speak when he would.

The premises considered, we have nothing to do but look to the record and see if it supports the verdict. We find ample testimony to support it.

Accordingly, the judgment is affirmed. It is so ordered. All concur.