## THOMAS W. COLLINSWORTH v. THE UNITED ZINC AND CHEMICAL COMPANY, Appellant.

### Division One, July 14, 1914.

1. **MOTION TO MAKE MORE DEFINITE AND CERTAIN: Nonsuit: New Trial: Appeal.** Defendant's motion to make more definite and certain having been overruled, he excepted and filed a term bill of exceptions, after which his answer was filed by leave of court. At the trial the judge gave a peremptory instruction for defendant, whereupon plaintiff took a nonsuit with leave. Afterward, on plaintiff's motion, the nonsuit was ordered set aside and a new trial granted. Defendant appealed from that order. *Held,* that the order granting a new trial cannot, on this appeal, be set aside, and the judgment be reinstated, on the ground that plaintiff's petition did not charge the negligence with sufficient particularity.

2. **NEGLIGENCE: Master and Servant: Operating Machine: Evidence: Question for Jury.** The plaintiff, employed by defendant, was injured while operating a planing machine the top of which consisted of two movable flat surfaces between which revolved two long knives set to a shaft. The surfaces could be raised or lowered separately by turning the proper one of two wheels on the side of the machine, and could be fixed at any elevation by the use of set screws. The plaintiff was not required to and did not assist in keeping the machine in repair, and the use of the set screws had been discontinued. When a board was to be dressed the front surface of the machine was depressed below the top of the circle of revolution of the knives a distance equal to the amount to be taken from the board, and the surface behind was set exactly level with the top of the circle. The plaintiff testified that he passed a board twice over the machine and it cut its way evenly through it; that he started the board again, when,

suddenly, he felt the rear surface of the machine go down, the knives caught the board and threw it across the room, and his hand went into the knives.. The rear surface of the machine was found after the accident to be depressed a quarter of an inch; and an expert, introduced by defendant, testified that the smooth cuts upon the board, which was shown him, could not have been made with the rear surface depressed, nor could it have been otherwise than depressed when the irregular cuts, which plaintiff asserts immediately preceded his injury,' were made. *Held*, that the question of negligence was for the jury.

Appeal from Jackson Circuit Court.—*Hon. H. L. McCune,* Judge.

AFFIRMED.

*J. C. Rosenberger, Kersey Coates Reed* and *Ashley & Gilbert* for appellant.

(1) The rule *res ipsa loquitur* has no application to the facts of this case and the trial judge did right in granting the peremptory instruction and his successor judge erred in setting aside the nonsuit. Even on plaintiff's own testimony the proof does not show that the back table of the machine suddenly, unexpectedly or otherwise dropped or subsided while plaintiff was using the planer. But for the purpose of the present argument we propose to accept plaintiff's statement that he "felt" the back table drop or go down at its face value, and propose, therefore, to assume that while plaintiff was using the planer, the back table thereof suddenly and without human agency dropped or went down, thereby jerking the stick out of plaintiff's hand and causing the injury. Defendant's contention is that the rule *res ipsa loquitur* has no application to the facts of this case, first, because no negligence can be inferred from the fact alone that on this occasion the back table dropped or subsided (assuming this to be true); that at most this was but proof of the primary physical cause of the injury, or,

in. other words, but proof of the happening of the accident, and that it was necessary for plaintiff to go further and produce some evidence, either direct or circumstantial, as to the secondary cause, that is, as to what caused the alleged movement of the back table, and if this was shown to be due to some defect in the machine, it was incumbent on plaintiff to show further that it was such a defect as could have been discovered by defendant by the exercise of ordinary care; and, second, because the rule *res ipsa loquitur* never applies in a master and servant case, where, as here, the injury occurs while plaintiff is operating and in charge of the appliance and he and his fellow servants have access to and are familiar with it and its use, and have full opportunity to know thereof, so that the cause of the accident is susceptible of direct proof and specification, requiring no resort to the rule invoked or to inferences or presumptions, the rule itself being one of necessity, not a favorite of the courts and wholly inapplicable in a master and servant case, where, as here, the facts are as much, if not more, in the possession of the plaintiff as of the defendant. The foregoing principles relied on by defendant are well sustained by the cases in this as well as in other jurisdictions. Klebe v. Distilling Co., 207 Mo. 480, 13 L. R. A. (N. S.) 140; Hamilton v. Railroad, 123 Mo. App. 619; Breen v. Cooperage Co., 50 Mo. App. 202; Glascock v. Swofford Co., 106 Mo. App. 657; Howard v. Railroad, 173 Mo. 531; Beebe v. Transit Co., 206 Mo. 419, L. R. A. (N. S.) 760; Oglesby v. Railroad, 177 Mo. 272; Patton v. Railroad, 179 U. S. 658; Railroad v. Barrett, 166 U. S. 617; Shandrew v. Railroad, 142 Fed. 320; Searles v. Railroad, 101 N. Y. 662. An examination of the foregoing cases will show that it would be stating it altogether too broadly to say that the rule "the thing speaks for itself" never applies in master and servant cases. Even the cases we have cited are careful to say that there may be cases, albeit

rare and exceptional, in which the rule will be applied. Klebe v. Distilling Co., 207 Mo. 480; Beebe v. Transit Co., 206 Mo. 419; Hamilton v. Railroad, 123 Mo. App. 619. But these and all of the cases unite in holding that in master and servant cases, before the rule will be applied, the plaintiff must show not only that an accident happened, but that there is that in the circumstances of the occurrence which in and of itself raises an inference of the master's negligence and excludes causes for which the master may not be responsible, and to this has been added the further qualification that where the injured servant when hurt is operating the machine, and he and his associated servants have access to and are familiar with it, so that the exact cause of the accident is susceptible of proof by witnesses, the plaintiff will be required to specify and prove negligence. Plaintiff's claim that the table dropped is so opposed to the physical facts and so opposed to the undisputed testimony that no verdict rendered in his favor would be allowed to stand. Brosius v. Lead & Zinc Co., 149 Mo. App. 181; Oil Co. v. Knisel, 79 Ark. 608; Noble v. Crane, 169 Fed. 55. (2) Plaintiff on his own testimony was guilty of contributory negligence.

*Guthrie, Gamble & Street* for respondent.

(1) The continued use of a machine known from previous experience to be erratic and dangerous in its action is negligence even if the cause of its dangerous action be not disclosed by inspection. Blanton v. Dold, 109 Mo. 64; Klebe v. Distilling Co., 207 Mo. 490; Oborn v. Nelson, 141 Mo. App. 435; Moffat v. Bateman, L. R. 3 P. C. 115, 22 L. T. (N. S.) 140; Ice Co. v. Finn, 80 Fed. 483; Ousley v. Railroad, 86 Ga. 538; Mooney v. Lumber Co., 154 Mass. 407; Railroad v. Stanford, 12 Kan. 372; Harter v. Railroad, 55 Kan. 256; Bridge Co. v. Fellows, 52 Ill. App. 504; Krogstad v. Railroad, 46

Minn. 18; Burnside v. Mfg. Co., 121 Mich. 129; Mc-Kenna v. The Carolina, 30 Fed. 200; Kaplin v. Biscuit Co., 38 N. Y. Supp. 1049. (2) There was evidence for the consideration of the jury upon the issue that this machine had a dangerous propensity and that the master knew it. Bender v. Railroad, 137 Mo. 245; Montgomery v. Railroad, 181 Mo. 477; Powers v. Transit Co., 202 Mo. 280; Wilson v. Board, 63 Mo. 137; Moore v. Transit Co., 194 Mo. 9; Franke v. St. Louis, 110 Mo. 525; Phelan v. Granite Co., 115 Mo. App. 432; Jordan v. Transit Co., 202 Mo. 429, 430.

BROWN, C.—This is a suit to recover damages for personal injuries suffered by plaintiff while operating a planing machine in defendant's carpenter shop. It was tried in October, 1905. The petition charges the negligence complained of as follows: "That said machine consisted of two tables, a front table and a back table, with a planer between, and for the performance of the work which plaintiff was then doing it was necessary that the tops of said tables should remain level and secure, but plaintiff says that on and prior to said September —, 1905, the defendant so *negligently constructed and maintained said machine and the appliances supporting said back table* that while plaintiff was in the performance of his work, pushing a board upon said planer and jointer, said back table suddenly and without warning, *because of its negligent construction* and *maintenance, dropped down* and thereby caused the plaintiff, who was holding said board, to lose control of the same, and threw his right hand against the knives of said planer and jointer, severing the four fingers of his right hand and injuring the thumb of his right hand." The answer consisted, first, of a general denial; second, a plea of contributory negligence; third, a plea of assumption of risk; and, fourth, that the injury resulted from the act of a fel-

low servant. This was all denied generally by replication.

The trial was in October, 1908, in Division Four of the Jackson Circuit Court, before Hon. H. L. McCune, Judge of said court, who, at the close of all the evidence instructed "that under the law and the evidence plaintiff has no cause of action against the defendant, and your verdict must be in favor of defendant," whereupon the plaintiff took a nonsuit with leave to move to set the same aside.

The plaintiff, within four days, filed his motion to set aside the nonsuit on the ground, among others, that the court erred in giving the peremptory instruction, and that under the pleadings and evidence he was entitled to have his cause submitted to the jury.

While this motion was pending and on January 1, 1910, the term of Judge McCune expired and Judge W. O. Thomas succeeded him as judge of said court, and afterward, on May 28, 1910, and during the April term, sustained said motion and set aside the nonsuit, from which order this appeal is taken.

Before filing its answer, and at the April term, 1908, the defendant filed its motion for an order on plaintiff to make his petition more definite and certain on the following grounds:

"1. To show in what way and manner said defendant was negligent in the construction of the planing mill and tables referred to in said petition.

"2. To show in what way and manner said defendant was negligent in maintaining said planing mill and tables referred to in said petition.

"3. To show what plaintiff was doing when said back table dropped down as referred to in said petition.

"4. To show how and in what manner plaintiff's right hand was drawn or thrown against the knives of said planer as the result of the dropping down of said table referred to in said petition.

"5.  To show how and in what manner said back table of said planing machinery referred to in said petition dropped down as the result of any negligence on the part of said defendant.

"6.  To state in what capacity plaintiff was being employed by said defendant at the time said plaintiff alleges he received the injuries referred to in said petition.

"Defendant further states that it cannot safely answer said petition or go to trial in said cause unless said petition is made more definite and certain in the particulars stated."

This was overruled by the court and bill of exceptions filed to such ruling at the same term, after which the answer was filed by leave of court.

The accident occurred October 17, 1905, in defendant's carpenter shop in Argentine, Kansas, where plaintiff was employed as a carpenter about the plant. Various woodworking machines were provided for the use of the carpenters in the shop, which was a building about 30 by 40 feet in size with a room partitioned off for an office and headquarters of F. J. Reichert, the foreman for the defendant in the woodworking department.  He selected the machine when it was purchased and was responsible for its operation in the plant.  He states in his testimony for defendant that he had charge of all the machinery there, instructed the men in its operation and when anything was wrong put it in first class shape.  It had been installed by him in the shop when new, the previous summer.  It was an excellent machine for the work for which it was designed, and was run by electric power.  It was constructed of iron and steel, on a castiron base upon which the knife-shaft and other movable parts, including the machinery for raising and lowering the tables, were hung.  Its exterior is substantially shown in the illustration.

Its construction was as follows:

The cutting part consisted of a heavy iron knife-block sixteen inches long and generally square in external shape, hung on a shaft between its journals, which rotated in boxes at each side of the machine. To this was bolted at opposite sides, with eight bolts each, two heavy knives of the same length, with their cutting edges at opposite corners. It extended transversely across the middle of the machine, and was placed below the tables over which the material to be worked was run, so that the cutting edges rotated toward the front or end of the machine from which the material was fed to it by hand. The table upon which the material was fed to the knives was of castiron, and in two parts, which moved independently of each other, one in front and the other behind the knives. Each of these at the end next the knives was chamfered from almost an edge at the top surface, upon a concave line downward and backward, so that when it was raised and lowered it could also be moved to and from the knives, so that the upper edge would fit close to them and follow, as near as might be, the line of the circumference of their rotation throughout the thickness of the plates.

When used, the front table was lowered as far below the top of the knives as the thickness of the cut desired and the back table was left on an exact level with the top of the knives, so that when the stick to be planed was shoved onto the knives from the front and the cut taken out of it, the planed surface rested on and was supported by the back table. In this way the work was shoved over the knives and was taken off from the back table. Sometimes the wearing or removal of packing from the journal boxes would lower them so that the back table would have to be lowered to their level; and sometimes, but not often, the character of the work was such that it was necessary to lower it below the level of the top of the knives. An

example of this is seen in the accompanying cut, which shows how they could be used to cut an opening for their own revolution in the gauge which sits over them.

For these and other purposes each of these tables may be lowered or raised by turning one of the hand wheels shown in the cut in front of the machine. The rod rotated by each of these circular handles passes through the thick wall and into the cavity of the base of the machine where a screw thread is cut on it, and it forms a worm gear with the teeth of a wheel on another screw which passes longitudinally under each side of the table. This, like the ordinary jack screw exerts an immense force on the jointed lever which may be seen under the table in the cut, forcing the table toward the knives. Under each corner of each table is a block, which may be seen plainly in the cut, one triangular half of which is fastened to the table and the other to the base, the diagonal edges sliding upon each other. As the table is forced toward the knives it climbs the triangular block attached to the base so that it preserves its relation to the circumference of rotation of the knives, which are speeded to 4500 revolutions per minute. In the picture the wheel at the right raises and lowers the front table from which the material is fed to the knives, and which is always lowered to the depth of the desired cut, while the one on the left works the table at the back which is practically always maintained at the same height. Each one of these appliances to raise and lower the tables had, when the machine was new, a set screw to hold it in place, which could be applied so tightly that the handwheel could not be moved. The one in front got lost, while the one behind the knives was used for a short time, but had lapsed into disuse sometime before the accident.

There was evidence on the part of plaintiff tending to prove that on two occasions before this accident·

the back table was found to be too low; that on one occasion at least it had become lowered when used.

Plaintiff, although he had worked at the plant before, had left it before this machine was installed, and came back about the 25th of September previous to the accident. He used it a few times before he got hurt. At that time he had a piece of plank to be planed. It was about thirty inches long, eight inches wide and two and one-half inches thick and he desired to dress it down to two inches in thickness. He ran it through the planer twice, once on each side, and found that he still had about an eighth of an inch to dress off, and started to run it through again when suddenly, as he says, he felt the back table go down, the knives caught the stick and threw it across the shop against the door with so much force that it startled Reichert in his office so that he came out to see what was the matter, and plaintiff's hand went in the knives so that four fingers were cut off. It is admitted that the machine was very dangerous when the back table was down. The plaintiff's counsel say in their statement: "But if the back table were down, say one-fourth of an inch, then, unless the timber were carefully held by the operator, this would result not only in the knives tearing the wood, making a rough and uneven cut, but also in great danger to the operator of having the knives jerk the lumber out of his hands and throw it with great force toward him, and of his hands going against the knives."

When the accident to plaintiff happened, Mr. Reichert directed that the machine should remain as it was and the piece of the plank that had been thrown from it was saved and brought into court. When the machine was examined it was found that the back table was a quarter of an inch below the top of the knives. The piece of wood that was being planed at the time of the accident was shown to Mr. Klassen, an expert witness of long experience, who testified for defendant

that it was impossible that the table should have been in that position when the first cut, which was a smooth one, was made; and when asked the following question: "If you saw a man actually do it—if you knew that this board had gone across here and made that smooth, clear cut, and the back table was already down—" He interrupted, and said, "It is impossible." Then the following question was asked him: "And if he turned that board over and shoved it across, and the next time it went across it cut as the knives have cut on that board, then the back table was down when that happened, wasn't it?" He answered, "Yes, sir, it could not be otherwise."

Other features of the testimony will be noticed as found necessary in the opinion.

I. The defendant seeks to have the order taking off the nonsuit and granting a new trial set aside and the judgment reinstated because the negligence charged in the petition is not pleaded with sufficient particularity. This is one of the cases that illustrate the justice and usefulness of the rule that a general charge of negligence is good as a basis for proof unless objected to at a proper time before trial. [Conrad v. DeMontcourt, 138 Mo. 311, 325; Schneider v. Railroad, 75 Mo. 295; LeMay v. Railroad, 105 Mo. 362; Morgan v. Mulhall, 214 Mo. 451.] The plaintiff, among other things about which he was employed, was charged with the duty of planing the surfaces of pieces of wood by running them over the top of the knives and tables of this machine, while others were employed to not only keep it in repair, but to instruct him in its operation. Ordinarily the operator knows no more of caring for the mechanism of the machine he uses than one knows of the care of the mechanism of his watch or the automobile

*Motion to Make More Definite and Certain.*

he hires at the public garage.  He uses the key of the watch to wind it so that it will do its work, and handles the levers of the automobile to regulate its movements.  In either case he depends upon the fact that the maker and repairer have taken care that these external appliances will produce the effect for which they are designated.

The evidence presented by the defendant as well as by the plaintiff in this case shows a like relation between the parties to this suit and the machine.  The plaintiff claims to have known that it would not have acted as it did unless there was some defect in its parts that reasonably careful construction and maintenance would have obviated.  The defendant not only retained the machine, but kept the stick that was being dressed in it at the time of the accident.  Under these circumstances the law ought not to make the right of the plaintiff to bring an action depend upon his ability to state in his petition details which he could only obtain from the defendant.

The defendant does not strenuously contend that this petition would not be good if not objected to before the trial, but it does contend with earnestness that having so objected by a motion to make it more definite and certain, before the filing of the answer or the introduction of any evidence, and duly saved its exception to the overruling of that motion, the point has been properly preserved, and may now be retried for the purpose of precluding the plaintiff from his statutory right to amend had the motion been sustained, and depriving him of a trial.  That the ruling of the court was properly objected to, and the objection preserved for use in case an appeal should be taken by defendant from a final judgment against it on the same petition, does not seem to be questioned, even by plaintiff, but the defendant forgets that the order overruling the motion is the judgment of the court, and although it might be reconsidered and set aside and

the motion sustained at any time before trial, the effect of such action would be the same as if the motion had been sustained at its first hearing. It would simply involve the entry of a rule on the plaintiff to make his petition more definite and certain in such respects as the court might indicate. The order overruling the motion is the law of the case until set aside.

II. The order of the court appealed from is founded in the theory that the evidence justified the submission of the case to the jury. If this be true, it must, of course, be affirmed. The facts about which all the evidence on both sides agrees and remains unquestioned, are as follows: (1) It was the duty of the plaintiff, as an employee of defendant, to from time to time as his service required it, use the machine in question to shape pieces of wood to be used in his work. (2) He was not required to nor did he assist in keeping the machine in repair, or in fit condition for use. That was done by the foreman, assisted by such employee or employees as he might call upon for that purpose. (3) The plaintiff went to the machine with a piece of wood to dress on both sides and to a given thickness. He ran it through the machine, dressing one side. During this operation the back table was up in its proper position level with the top of the knives. Mr. Klassen, an expert witness for defendant, when asked if it was down, answered, "It is impossible." Plaintiff then ran it over the knives to dress the other side, and the accident happened. The same witness was asked if the back table was then down, and he answered that it could not have been otherwise. (4) When examined after the accident the back table was found to be a quarter of an inch lower than the top of the knives, a position of great danger to the operator.

**Negligence: Jury Question.**

260 Mo.—45

The defendant attempts to explain this sudden subsidence of the back table by saying that it was impossible that the table should have lowered itself by its own weight under the conditions existing, and that the plaintiff, in preparing to make the last cut, lowered the back table by mistake instead of the front one as he should. The plaintiff answers: Your theory may be all right, but all theories must yield to the fact, which you admit, and only attempt to account for upon a hypothesis which finds no support in reason or probability. The determination of this question is within the province of the jury.

The fact that set screws were provided to lock the screw jack by the manipulation of which the height of these tables was adjusted, was notice that they were necessary for that purpose, and the fact that the accident happened by reason of the discontinuance of their use would at least call for explanation on the part of the defendant. It recognizes this necessity and attempts to explain by saying that this lock was a "fool's contrivance;" that it was designed to prevent a fool from making the mistake which they now attribute to the plaintiff, of meddling with the back table while he thinks he is adjusting the front one. Reminded of the fact that the same contrivance was provided for the front table, they gave it up. Their explanation implies that whatever may have been the feeling of the humane manufacturers, as for them they only protect the wise, letting the fools, of whom plaintiff was one, take care of themselves. The adjusting device, although a common mechanical one by which power applied by the hand of the operator to the wheel outside the machine is changed inside it to the traverse movement of a screw, pressing upon a lever by which the heavy cast-iron table can be moved upward, or be lowered by reversing the movement, it does its work under peculiar circumstances, sitting, as it does, in a frame being shaken while the machine is in operation

by the tremendous force exerted by a heavy iron knife-head revolving at the rate of 75 revolutions per second and striking the wood twice during each revolution. The record does not inform us of the pitch of the thread on the traverse screw, but we do know from common experience and knowledge, that while the application of the weight of this table while at perfect rest might not reverse the movement of the screw, the rapid and continuous shaking of the weight actually applied would create a different condition, and generate a force with which the operators as well as the manufacturer would have especially to deal. The defendant does not deny that it was its duty to maintain it in a safe condition for those using it, as well as to instruct them how to use it safely. The abandonment of the use of the set screw which locked the back table in position was as clearly a defect in its maintenance as the removal of the screw designed to lock the front table. Whether this abandonment was negligence, and, if it was, whether the accident resulted from it, were clearly questions for the jury.

So far as the charge of contributory negligence of the plaintiff is concerned, it is founded upon the assertion that he did not examine the position of the back table before he began to use it. The fact that defendant proved by its witness Klassen that the elevation of the back table was all right when he began to plane the same stick, and that this evidence is undisputed, disposes of that question.

For the reasons stated the judgment of the Jackson Circuit Court setting aside the nonsuit is affirmed and the cause remanded for further proceedings. *Blair, C.,* concurs in result.

PER CURIAM.—The foregoing opinion by Brown, C., is adopted as the opinion of the court. All of the judges concur.