## Snyder v. Walters

*Charles W. Matten, Harry R. Matten,* and *Mark C. McQuillen,* for plaintiff.
*George B. Balmer* and *Zieber & Snyder,* for defendant.

MAYS, J., June 5, 1933.—The plaintiff in this action seeks to recover damages for injuries sustained as the result of a gunshot wound in the right foot, necessitating the amputation of the foot.

The plaintiff testified that he was standing in a grass field, leaning against a fence; that the defendant came to within 3 feet of him when he took his gun from under his arm and held it in his hands with one hand on the trigger-guard and the other on the barrel; that the gun was pointed directly at the plaintiff's foot; and that while it was being held in this manner it was discharged, the load entering the plaintiff's right foot. Frank Kabellas substantially corroborated the plaintiff.

The defendant in effect says that when he came very close to the plaintiff he stopped, and just as he had finished asking about who fired a shot that he had heard, his gun discharged, the charge striking the plaintiff's foot; that he had fired the gun about a half hour before the accident, reloaded it, and engaged the safety; that he was carrying the gun in his right wrist or arm, with his right hand on the trigger-guard; that he did not recall touching the safety; that he had a hammerless double-barreled shotgun, which, after reloading and snapping together, automatically put on the safety catch; and that the gun was in the same condition on the day of the trial as it was on the date of the accident.

It was demonstrated at the time of the trial that, with the safety on, the second trigger would function and discharge a load.

The jury returned a verdict in favor of the plaintiff in the sum of $1,700.

We are now concerned with rules for a new trial and for judgment n. o. v. They raise three questions:

1. Did the court err in charging the jury that the burden of proving negligence is not upon the plaintiff, but that it is incumbent upon defendant in order to avoid responsibility to show that he took all reasonable precautions to guard against an accident and that the discharge of the gun did not result from any careless act on his part?

2. Should we conclude as a matter of law that the defendant is not liable in damages to the plaintiff, in that his injury was brought about by an unfortunate accident for which the defendant was not responsible, and out of which no cause of action arose?

3. Did the court err in sustaining the plaintiff's objection to the question: "In your opinion, do you consider both of those methods proper ways of handling

a gun?" propounded to the witness Lincoln Ruth, who testified that he has hunted every season consecutively for 36 years; that he is president of the Berks County Rod and Gun Association; that he is president of the Conservation Council of Pennsylvania; that he hunted all over the State of Pennsylvania with other people, and that he observed how hunters carry their guns?

In making answer to these questions, it is well to have in mind what was the exact duty of the defendant. Persons handling firearms when in the immediate vicinity of others are held to a very high degree of care and are liable for injury to another in his person or property resulting from the discharge of said firearms, even though the discharge is accidental and unintentional, provided it is not unavoidable: 20 R. C. L. 52; Lindh v. Protective Motor Service Co., Inc., 310 Pa. 1, 4; Knasiak v. Rambo, 57 Pa. Superior Ct. 8. In the latter case, Judge Henderson, in speaking about a loaded firearm, said (p. 12): "The person using such a weapon is bound to a high degree of care to prevent injuries to others. All the cases hold a strict rule of accountability for the want of extraordinary care in the use of firearms."

The defendant had the sole control and management of this gun and because thereof must be held to the exercise of a very high degree of care. This being so, it was not the plaintiff's burden to show a negligent act, but that of the defendant to prove that the gun was not fired intentionally or negligently, and that the result was a pure accident. It has been so ruled by the courts of other jurisdictions: Atchison v. Dullam, 16 Ill. App. 42, cited in 40 Cyc. 874; Townsend v. McCullum, 175 N. C. 698, 95 S. E. 364; McLaughlin v. Marlatt et al., 296 Mo. 656; Epperson v. Elliott, 242 S. W. (Mo. App.) 1012; Morgan v. Mulhall, 214 Mo. 451; 114 S. W. 4, 6. In the last case, the court said (p. 459): "But, eschewing sentimental conceits and coming to the cold technical law, it has been held that in an action for damages sustained from injuries caused by an unlawful and wrongful assault and shooting, plaintiff is *prima facie* entitled to a verdict upon proof that he was shot by defendant; it then devolves upon defendant to show that the shooting occurred without fault on his part, or to put in evidence mitigating facts; it is not necessary that plaintiff, in the first place and by direct evidence, should show either an intention to commit the injury or that defendant was in fault. [Conway v. Reed, 66 Mo. 346; Orscheln v. Scott, 90 Mo. App., l. c. 366, *et seq.*] That is to say, a plaintiff, hit by a bullet, may identify the shooter, prove the hit and quit. At that point the burden shifts, and the law, as well as the good sense of it, puts the boot on defendant's foot and the laboring oar in his hands—he must justify or otherwise lawfully excuse the shot."

The defendant seems to rely upon McCleary v. Frantz, 160 Pa. 535, and Winans v. Randolph, 169 Pa. 606, pointing out that in neither of them is there any suggestion that the ordinary burden of proof of a plaintiff in a court of law to show defendant did some wrong does not exist in this type of case. The Supreme Court of Rhode Island, in Hawksley v. Peace, 38 R. I. 544, 96 Atl. 856, 859, has, we believe, correctly interpreted the meaning and application of these decisions.

There was no necessity for the testimony of Mr. Ruth, because the subject matter of the inquiry is not so far removed from the realm of common experience that the ordinary jury cannot fairly be expected to draw a correct inference therefrom. He is no more of an expert in the handling of a gun than many thousands of men and women who year after year procure licenses and go to the fields in search of game. To be an expert one must possess knowledge and experience not possessed by mankind in general: 22 C. J. 639, sec. 733.

What we are concerned with here is not so much whether a given act was performed in a prudent and proper manner, a subject upon which a witness

552

qualified to speak may express an opinion, but whether the line of conduct of the defendant was negligent or careful, a matter for the jury after the facts are laid before them: Elder v. Lykens Valley Coal Co., 157 Pa. 490, 499.

And now, to wit, June 5, 1933, the rules for a new trial and for judgment n. o. v. are discharged.

From Charles K. Derr, Reading, Pa.