WILLIAM H. OLIVER, RESPONDENT, v. LYNN MEAT COMPANY; APPELLANT.—93 S. W. (2d) 114.

St. Louis Court of Appeals.   Opinion filed April 7, 1936.

Appellant's motion for rehearing overruled April 28, 1936.

*Russell J. Horsefield* and *Richard Molloy* for respondent:

*Woodward & Evans* for appellant.

BECKER, J.—Plaintiff, respondent here, sued to recover damages for personal injuries resulting from a fall down an elevator shaft on defendant's premises.

The petition sets out that plaintiff was an invitee on the premises and in attempting to use the elevator was caused to fall down the shaft by reason of defendant's negligence in failing to equip the elevator with an interlock which would prevent the opening of any shaftway door or gate unless the elevator platform was within six inches of that particular landing, all in violation of an ordinance of the city of St. Louis.

The answer generally denied the allegations of the petition, and affirmatively alleged that plaintiff's injuries were caused by his own carelessness and negligence in stepping into an unlighted elevator shaft when he should have known that the elevator was at another floor, and without exercising ordinary care to discover that the elevator was not at the first floor level. The reply generally denied this assertion on the part of defendant.

The evidence shows substantially the following situation: Defendant is engaged in the retail food business and maintains a large store at the northeast corner of Sixth and Morgan (now Delmar) streets in the city of St. Louis. The first floor of this building is reserved for customers, while the upper floors are used for various utility purposes, such as storage of goods and live poultry and a bakery department. The basement is also used for various purposes, among others, a section equipped with large kettles and other devices for the dressing of poultry. In order to reach the various floors defendant maintained a typical freight elevator for the carrying of goods from one place to another, and this was located near the rear or east end of the building, one room separated from the north wall. According to the testimony of an expert elevator engineer, the openings, with the exception of the first floor, were equipped with a mechanical device which would secure the shaftway gate against opening up when the elevator platform wasn't within a safe distance of the opening. The

first floor gate could be manually raised, regardless of the position of the elevator, if a person knelt down and detached a spring lock which held the gate in place. However, unless this first floor gate was within two inches of the floor, the elevator could not be moved, as the further opening of the gate would break the electrical contact. The ceiling of the elevator was equipped with a dome light, but this could not be switched on without entering the elevator platform.

Plaintiff had been employed by defendant for approximately six years before the accident. His duties were varied and he generally performed whatever work was assigned to him by the manager. At times he served as night watchman in the absence of the regular man, and at other times remained to watch the store on Sundays. During the regular working days his duties took him to all of the floor levels, including the basement, and he had, many times, operated the elevator. He did not work every day, although he reported practically every morning to see if there was anything for him to do. During his spare time he accepted outside work and shortly before his fall, some one in the store, plaintiff thought it was the manager, told him that the proprietor of a small restaurant in the neighborhood wanted some one to paint his restaurant, and this man was a good customer of the store. Accordingly, plaintiff contacted this man and secured the job, which he was doing in his spare time, including evenings. In his deposition plaintiff stated that this painting job had nothing to do with his work at the Lynn market. He had, however, secured permission from defendant to use some of its equipment, including brushes and a scaffold board.

On the day of the accident plaintiff had worked for defendant all day in the store. Until after five o'clock he had been at work dressing poultry in the basement, which consisted of turning steam into large kettles and using the hot water thus formed for cleaning and picking the fowl. Defendant purchased the steam from an outside concern, the amount it used being measured by meter and paid for according to the amount used. In order to use the steam it was necessary to turn on a valve near the meter and sometime before this the manager had cautioned him about leaving the valve turned on and had told him that he would hold him personally accountable. Plaintiff contemplated doing some more painting at the restaurant that evening and accordingly left the store between six and seven o'clock for that purpose. In the course of his painting plaintiff found himself in need of a scaffold board and he returned to the store for the purpose of obtaining one. He went to the side door near the east end of the building and, after knocking and stating the reason for his return, was admitted by the night watchman. At that time the dome light on the elevator was lighted and he operated the elevator to the second floor and got the board, then returned by elevator, leaving it at the first

floor level and went back to the restaurant. A short time later plaintiff returned to the store for the second time that evening. In a deposition taken prior to the trial the plaintiff testified that on his second visit to the store, when the watchman opened the door and let him in, he informed the night watchman that he wanted to get some linseed oil out of his locker in the basement. On direct examination at the trial, plaintiff testified that while painting he suddenly recalled the steam valve and his employer's admonition concerning it, and not knowing whether it was on or off, he determined to find out and therefore returned to the store to see if it had been turned off. Plaintiff testified that he did not inform the night watchman that he returned to check up on the steam valve. The watchman testified however that it was duty to go over the building and see that the steam valves were turned off.

When plaintiff entered the side door he walked directly to the elevator shaft and, after raising the gate, stepped in and fell approximately fifteen feet to the bottom of the shaft. It being after business hours no lights were burning in the store except a small one in the office and another in the storeroom just north of the elevator. The elevator shaft was dark and there was not enough reflection from the lights to see whether or not the elevator platform was at the first floor level. Plaintiff testified that defendant had installed new gates for the entrances to the elevator shaft a few weeks before, and that the elevator could not be moved unless these gates were down. There is testimony also to the effect that unless the elevator was at the floor level, the gates guarding the shaft on that floor could not be opened. Plaintiff testified that when he raised the gate he assumed that the elevator was there but he did not know whether the gate could be raised in the absence of the elevator, although he knew that the gate on the second floor could not be raised unless the elevator was on that level.

Plaintiff read in evidence the ordinance set out in his petition and, after the close of plaintiff's case, defendant requested an instruction in the nature of a demurrer and upon its refusal stood thereon. Plaintiff offered no instruction except one on the measure of damages and defendant strenuously objected, without avail, in the submission of the case to the jury without some instruction defining the issues and plaintiff's right to recover a verdict.

The court gave certain instructions at the request of defendant, and the submission of the case resulted in a verdict for plaintiff for $3800, and defendant appealed.

Appellant assigns as error the refusal to give its requested instruction in the nature of a demurrer offered at the close of plaintiff's case, because plaintiff, at the time he met with his injury, was merely a

licensee on the premises of the defendant and therefore defendant was not liable even though the elevator was negligently maintained.

In examining the record to dispose of this assignment of error we must consider the testimony in the light most favorable to plaintiff, and plaintiff's evidence, whether contradicted or not, must be regarded as true so long as it is not impossible as opposed to the physics of the case or entirely beyond reason, and give plaintiff the benefit of every reasonable inference to his case, which the evidence tends to support. [Grubb v. Curry (Mo.), 72 S. W. (2d) 863; Marshak v. Grocery Co. (Mo. App.), 83 S. W. (2d) 185, loc. cit. 190; Freeman v. Term. R. R. Co. (Mo. App.), 78 S. W. (2d) 559; Mick v. Thompson (Mo. App.), 77 S. W. (2d) 470, loc. cit. 474; Howard v. Sacks (Mo. App.), 76 S. W. (2d) 460, loc. cit. 463; Steger v. Meehan (Mo.), 63 S. W. (2d) 109, loc. cit. 110.]

Viewed in light of that rule there is sufficient competent evidence in the record which if believed tends to support the view that plaintiff was employed by the defendant as a handy man and reported practically each morning to find out whether the defendant had work for him for that day. Sometimes he substituted for other men who had regular employment with the defendant; sometimes he worked on holidays and Sundays; sometimes he acted as night watchman. Plaintiff, when asked what he did on the mornings when he reported for work and the defendant had no work for him, stated that he "usually stayed around there and waited for an hour or so and lots of times they would ask me to take something to the basement or sometimes to the second or third floor;" that he was not paid for such work. Furthermore defendant had its own bakery in the building, in which the bakers employed by defendant worked through the night and the bakers were admitted to the building by the night watchman.

When plaintiff, on the evening in question, returned to defendant's place of business for the second time, one of his purposes was to examine whether or not he had turned off the steam which he had been using during the day in his work for defendant. The defendant did not make its own steam but purchased it, paying therefor by meter measurement. On an occasion a short time before when the steam had been used by plaintiff in connection with the dressing of poultry, he had forgotten to turn off the steam at the close of the day and "the next morning Mr. Klein (manager of defendant's business) called us upon the carpet and gave us a raking about it and told us not to do that any more, and he told me he would hold me especially to look after it and check over this steam." It is true plaintiff testified in his deposition taken prior to the trial of the case that he told the night watchman who let him into the building the second time that night, that he was returning to get some linseed oil which he had left in the basement, and which he desired to use for thinning paint which he

was putting on the ceiling of the restaurant near by; but plaintiff testified at the trial of the case that that was but one of his reasons, and that he would have returned on this second occasion in any event whether he needed the linseed oil or not, because he had remembered that he had made use of the steam during that afternoon but could not remember whether he had turned it off, and, therefore, determined to go back and make sure. In light of this testimony it cannot be ruled as a matter of law that the plaintiff, on the occasion in question, was a licensee and not an invitee, for though plaintiff's return to defendant's building was after the usual working hours, yet since the purpose of his visit was to make sure that the steam which he had been using that afternoon in connection with his work for his employer, was in fact turned off, a matter which "he was especially to look after," it is evident that the purpose of his return was in connection with the business of the defendant and to do an act beneficial to defendant. The object of the plaintiff was to make sure that the steam did not continue passing through the meter the entire night at the expense of the defendant when no use was being made thereof. [Kennedy v. Phillips (Mo.), 5 S. W. (2d) 33; Simmons v. K. C. Jockey Club (Mo.), 66 S. W. (2d) 119; Kemp v. Doe Run Lead Co. (Mo. App.), 57 S. W. (2d) 758.]

In our opinion the question of whether plaintiff was an invitee or a licensee was one for the jury and therefore the demurrer, so far as that question was concerned, was well ruled.

But appellant contends further that its instruction in the nature of a demurrer should have been given in that upon the record plaintiff was guilty of contributory negligence as a matter of law. The point is without merit.

There is testimony which if believed tends to prove that that part of the premises in which the elevator which plaintiff intended to use to go to the basement upon the occasion in question, was dark, and it was impossible to see whether or not the platform of the elevator was at the first floor level, but that there was no switch available on the outside of the elevator to turn on the electric light which hung in the elevator, so that it was necessary, in order to have light in the elevator, that one would step into the elevator and turn on this light. Furthermore, up to a few weeks prior to the day in question the defendant had the doors of the elevator shaft guarded only by "half gates; just a kind of bar and you could use the elevator when they were in there regardless of whether the gate was up or down," and had thereafter installed "entirely new gates about six feet high with an automatic catch on them and *you could not raise them when the elevator was not there on the floor in the approximate neighborhood of being even with the floor.*" And with reference to the new gates, plaintiff testified that, ". . . when you could lift the gate

up it was in my mind that the elevator was there." Plaintiff testified on cross-examination: "I raised the gate up and stepped in to turn this light on and it was dark and I put my right foot out to feel the floor of the elevator and I turned loose of the gate and over balanced and fell in. There was no elevator there."

There is thus sufficient testimony in the record -which if believed tends to show that it was understood that the new elevator gates could not be raised if the elevator was not at the landing, and that when plaintiff was able to raise the gate at the elevator shaft on the first floor on this evening, he thought that the elevator was level with the first floor, and the surroundings being in utter darkness and with no switch outside of the elevator to turn on any light either in front of or in the elevator, plaintiff stepped into the shaft in the belief that the elevator was at the landing.

In light of this testimony the question of plaintiff's contributory negligence was a question for the jury and defendant's instruction in the nature of a demurrer, in so far as this question is concerned, was properly denied.

Nor is there any merit in the contention that defendant's instruction in the nature of a demurrer should have been given on the ground that if plaintiff entered the premises for the purpose of performing some duty connected with his employment, plaintiff's remedy was under the Missouri Workmen's Compensation Act, which remedy is exclusive.

In light of the pleadings, whether or not plaintiff and defendant were subject to the Missouri Workmen's Compensation Act was not an issue in this case. The defendant could have raised that issue as an affirmative defense, in which case the burden both to plead and to prove that defense would have rested with defendant. Having failed to plead and prove this defense in the trial court, the question cannot. be raised here on appeal. [Simmons v. K. C. Jockey Club, supra; Lally v. Morris (Mo. App.), 26 S. W. (2d) 52, l. c. 55; Kemper v. Gluck, 327 Mo. 733, 39 S. W. (2d) 330, l. c. 333.]

We next take up appellant's contention that the trial court, over objections and exceptions of the defendant, submitted the case to the jury without giving or requiring the giving of an instruction defining plaintiff's theory of liability and right, if any, to recover, and in submitting the case to the jury, so far as plaintiff's requested instructions were concerned, solely upon a measure of damage instruction. Appellant cites in support of this contention the recent case of Dorman v. E. St. Louis Ry. Co., 335 Mo. 1082, 75 S. W. (2d) 854.

We have recently held (Eberle v. Koplar, 85 S. W. (2d) 919) that the Dorman case, in construing section 967, Revised Statutes of Missouri, 1929 (Mo. St. Ann., sec. 967, p. 1240) with respect to the necessity of giving instructions to the jury prior to the submission of

a case, dealt with a statute on procedure (Morgan v. Mulhall, 214 Mo. 451, 563, 114 S. W. 4) and not substantive law, and that, therefore, the rule laid down in the Dorman case operated prospectively only and not retrospectively. [State ex rel. May Department Stores Co. v. Haid, 327 Mo. 567, 38 S. W. (2d) 44, l. c. 53; Mountain Grove Bank v. Douglas County, 146 Mo. 42, l. c. 52, 47 S. W. 944; 7 R. C. L. 1010; Klocke v. Klocke, 276 Mo. 572, l. c. 582, 208 S. W. 825; Kelley v. Rhoades, 7 Wyo. 237, 51 Pac. 593, 39 L. R. A. 594, 75 Am. St. Rep. 904, l. c. 905; State ex rel. Midwest Pipe & Supply Co. v. Haid, 330 Mo. 1093, 52 S. W. (2d) 183, and State ex rel. Blackmer, etc., Pipe Co. v. Rosskopf, 331 Mo. 793, 55 S. W. (2d) 287.]

Concededly the instant case was tried *nisi* prior to the rendering of the decision in the Dorman case and we are, therefore, unable to invoke the rule announced in the Dorman case in determining the point in hand.

Under the authority of the rule in vogue prior to the ruling in the Dorman case the point sought to be made is ruled adversely to appellant. [Christopher v. Ry. Co. (Mo.), 55 S. W. (2d) 449; Ternetz v. Lime & Cement Co. (Mo.), 252 S. W. 65, 70; Morgan v. Mulhall, supra; Powell v. Ry. Co., 255 Mo. 420, 164 S. W. 628.]

Finding no error in the record prejudicial to the rights of defendant the judgment should be affirmed. It is so ordered. *Hostetter, P. J.*, and *McCullen, J.*, concur.